## FLAT–MARKS REALTY CORPORATION v. SILVER'S LUNCH STORES, Inc.

### No. 98.

Circuit Court of Appeals, Second Circuit.
Dec. 10, 1934.

Meyer Kraushaar, of New York City, for appellant.

Joseph Sterling, of New York City, for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This case arises on an appeal from an order in bankruptcy affirming the order of a referee, expunging a claim against the bankrupt in composition, and vacating an order granting an examination under section 21a, Bankr. Act (11 USCA § 44 (a). After the order for examination had been granted, the bankrupt countered by a motion to amend its schedules by striking out the claimant's name as creditor, and to vacate the order of examination because it was not made on the petition of a creditor. The referee held that these proceedings raised the issue of the claimant's standing as creditor; and in the recitals of the order expunging the claim he further declared that the claimant had consented to try out the merits of the controversy in this way, though the record is otherwise silent.

The facts are as follows: The claimant was the lessee of real property in Brooklyn, of which it had sublet a parcel to the bankrupt, and the remainder to other parties. By the summer of 1931 it had got into serious arrears on its lease, and its lessor, O'Flyn, commenced a summary ejectment against it. Meanwhile by a devolution not necessary to describe, all its shares had come into the control of an insolvent bank which thereafter managed its affairs. The bankrupt conducted a restaurant which it thought to be of much value, and it was for this reason anxious to prevent the claimant's eviction; after some negotiations with the bank's lawyer, Kraushaar, it agreed to make good the existing arrears in rents and taxes, so that the summary ejectment could be dismissed. As a condition it demanded as security the sub-rents of those parts of the premises which it did not itself occupy. Kraushaar wrote a letter to it, of which the important clause is as follows: "You shall have the right to collect the rents from any sub-tenants on the premises, to make any leases in connection therewith. * * * You are to act as the agent of the Flat-Marks Realty Company, coupled with an interest until such times as the moneys advanced by you are repaid." The bankrupt thereupon paid to O'Flyn $17,775 on September 11, 1931, and the summary ejectment was dismissed. The claimant, however, continued to default in the payment of its rents and taxes, the greater part of which the bankrupt was forced to pay in order to prevent a second ejectment. Meanwhile negotiations were on between the bank and the bankrupt for the purchase of the claimant's shares, which finally broke off in September, 1932, at which time the claimant, then insolvent, was in default notwithstanding the bankrupt's payments to O'Flyn after September 11, 1931. Having no other means of saving the term but either to keep on making good these defaults, or to take a renewal of the lease in its own name, the bankrupt at the end of October, 1932, began direct negotiations with O'Flyn; and reached an agreement on November second. A written lease was signed on November eighteenth as of November first, by which it became the lessee in a new lease, granted on condition that it paid all remaining arrears under the old. Bankruptcy followed in January, 1933, and a composition has been confirmed by the District Court. The claim proceeds on the theory that the bankrupt holds the renewal upon a constructive trust because of its fiduciary relation to the claimant; and that for this reason it continued liable for rent until petition filed, and was subject to a decree compelling it to convey the new term. It also demanded an alleged balance of the rents received from the sub-tenants over the bankrupt's advance. The referee decided that the renewal was not subject to a constructive trust, and that there was no balance due on the accounting; and the judge affirmed his order.

■ Although equity has always been sensitive as to the acquisition by a fiduciary of renewals of leases, and will impose a constructive trust in favor of the prior lessee whenever the relation is established, the relation of sub-lessee to sub-lessor is not fiduciary. Maunsell v. O'Brien, 1 Jones (Ireland) 176; Robinson v. Eagle-Picher Lead Co., 132 Kan. 860, 297 P. 697, 75 A. L. R. 840; Goocey v. Hopkins, 206 Ky. 176, 266 S. W. 1087; Cook v. Basom, 164 Mo. 594, 65 S. W. 227; Hawkins v. Klein, 124 Okl. 161, 255 P. 570. A lessee owes no duty to his lessor beyond those contained in the lease; he does not assume to act for him in any particular; only to perform the express promises which it contains. Indeed the claimant does not stand upon the bankrupt's being its sub-lessee, but upon its position as pledgee of the sub-rents and agent to collect them. Before we impose upon it that abstinence which in proper cases equity would exact in order to exclude any possibility of self-interest in the performance of its duties, we must learn what those duties were, for it was only as their discharge was affected that its freedom of action was limited. Expressly they were merely to collect the sub-rents and account for them; though no doubt that would have forbidden it from surrendering the existing sub-leases and taking renewals in its own name, if it had had the power. It was not however the mortgagee of the term, or bound to perform the covenants of the lease, either as grantee or by a separate undertaking. If it had been, it would have been forbidden to take advantage of its own breach, and so secure a renewal, just as it would be forbidden to surrender it for that purpose. Holridge v. Gillespie, 2 Johns. Ch. (N. Y.) 30. But a pledgee or mortgagee need do no more than return so much of the property as remains after the debt is paid; its vicissitudes are not on his head, so far as he does not provoke them, by action or inaction. In the case at bar, as we have said, the bankrupt was not bound to keep the term alive; that was the claimant's duty, the bankrupt's performance of which for a season implied no undertaking to continue. When it stopped, it did not instigate O'Flyn to evict the claimant, the term

was at an end, not through any defection in the bankrupt's allegiance but because the claimant had no money to go on. Thus the bankrupt was not like a partner or a trustee, upon whose activity in preserving the term the opportunity to profit by his own default might be a damper. The bankrupt having no such duty was under no corresponding limitation; it was under no limitation at all; it might take a renewal as freely as any one else.

There remains the account of the bankrupt as agent of the claimant in the collection of the sub-rents, and its indebtedness as sub-lessee while it remained such. The account as to the sub-rents collected is as follows:

| Credits | Debits | |
|---|---|---|
| Sept. 11, 1931 | Received from Silver-Rod Store | |
| $17,775.45 | Oct. 31, 1931 | $ 2,620 |
| | Nov., 1913 to Sept. 1932 | 8,733.33 |
| | Sept. & Oct., 1932 | 1,746.66 |
| | From Brooklyn Fruit & Vegetable Market | |
| | Oct. 17, 1931 | 550 |
| | Nov. & Dec., 1931 | 666.66 |
| | Jan. to Nov., 1932 | 2,333.33 |
| $16,649.98 | | $16,649.98 |

Balance $ 1,125.47

The claimant asserts that it should also be credited with $1,500, paid by the Silver-Rod Store to the bankrupt in September, 1931; but it is clear that this was merely a contribution to the advance which the bankrupt was to make or had made. It was not part of the Silver-Rod rents, nor was it in any other way funds belonging to the claimant. Kraushaar gave some evidence to the contrary but it was disputed, and the referee accepted the bankrupt's version. Therefore in the account as pledgee, the claimant still owed $1,125.47.

However, the bankrupt also owed its own sub-rents for fifteen months, $43,750, from August 1, 1931, to October 31, 1932, both inclusive. It owed nothing further for, as we have held, its sub-lease ended on October 31, 1932. Against this, however, it was entitled to credit itself with payments made to O'Flyn to keep the term in existence; as to these it was not a volunteer. They were as follows:

| | | |
|---|---|---|
| Nov. 4, 1931: | Quarterly rent Nov. Dec., 1931 Jan., 1932 | $ 8,750 |
| Jan. 1, 1931 | Quarterly rent Feb., Mar., April, 1932 | 8,750 |
| Feb. 3, 1932 | Taxes last half 1931 | 4,267.58 |
| Apr. 8, 1932 | Quarterly rent May, June, July, 1932 | 8,750 |
| Sept. 26 and Oct. 19, 1932 | Rent for Aug. and Sept. | 5,833.33 |
| Nov. 18, 1932 | Rent for Oct., 1932 | 2,916.25 |
| Nov. 18, Dec., 1932, January, 1933 | Back taxes | 4,500 |
| | | $43,767.16 |

These payments may be set off against the sub-rents due from the bankrupt, and make unnecessary any recourse to the balance due upon the payment of $17,775; or to several items of rent paid to the New York Rapid Transit Co.; or to any items of insurance premiums. The bankrupt is not asserting any debt against the claimant; it merely seeks to prove that it owes nothing, and the account need not therefore be struck definitively. Nor need we bring into the account a deposit of $8,750, held by the claimant as security for the sub-lease.

A question has been raised as to the justiciability of the claim in this proceeding. We need not say whether the allegation in the petition for examination under section 21a, that the petitioner was a creditor, was issuable. The section gives the remedy only to a creditor, and it may well be that if his status is challenged he must either make it good or withdraw. In re Jehu (D. C.) 94 F. 638 (semble). Though see In re Henderson, Inc. (D. C.) 266 F. 254. The recital in the order asserts without contradiction that the claimant consented to the liquidation of its claim in this proceeding, and the merits have been tried out at length and decided. After such a concession the referee had jurisdiction to try the cause and expunge the claim. For the same reason we need not decide whether a bankrupt can secure a ruling upon the validity of a claim by motion to strike the creditor's name from his schedule.

Order affirmed.