L.C.L. THEATRES, INC., a Texas Corporation, Plaintiff-Appellant,

v.

COLUMBIA PICTURES INDUSTRIES, INC., et al., Defendants-Appellees.

No. 76–3421.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1978.

Robert C. Cheek, Edwin S. Tobolowsky, Neal E. Young, and David L. White, of Tobolowsky & Schlinger, Dallas, Tex., for plaintiff-appellant.

John L. Hauer, Frederick Bartlett Wulff, Dallas, Tex., for Sargoy, Stein, etc.

James G. Ulmer, Richard A. Brooks, Houston, Tex., for Columbia Pictures, etc.

Before TUTTLE, COLEMAN and RONEY, Circuit Judges.

COLEMAN, Circuit Judge.

L.C.L. Theatres, Inc., a corporation owning or operating movie theatres in Texas (L.C.L.), and John G. Long, as president and major stockholder of the corporation wholly owned by himself and his family, appeal from an aggregate award of $429,200 to eleven moving picture distributors (distributors) for film rental owed, but not paid because of breach of contract and fraud accomplished by underreporting gross admission receipts for the period January 1, 1966–November 30, 1973.

The nineteen page opinion of the District Court is reported, *L.C.L. Theatres, Inc. v. Columbia Pictures Industries, Inc.*, 421 F.Supp. 1090 (N.D.Texas, 1976).

We affirm as to liability of L.C.L. for fraud and breach of contract committed within two years of the filing of the counterclaims. We reverse as to liability and damages for any prior period of time. We remand for the computation of damages and also on the issue of the personal liability of John G. Long.

L.C.L. started the litigation in October, 1973, by filing suit against ten motion picture distributors [1] for alleged violations of federal antitrust laws, 15 U.S.C., §§ 1 et seq., and Texas antitrust laws, §§ 15.01 et seq., Texas Code Annotated Business and Commerce. On November 19, 1973, the ten distributors [2] counterclaimed for the money allegedly due them.

For the reasons appearing in its reported opinion, the District Court quite correctly held that L.C.L. wholly failed to establish any antitrust violations, hence we do not burden this opinion with a duplicative discussion of that aspect of the case. The Court further found that "fraud of massive

---

**1.** Metro-Goldwyn-Mayer, Inc.; Universal Film Exchanges, Inc.; Columbia Pictures Industries, Inc.; United Artists Corporation; Avco Embassy Pictures Corporation; Buena Vista Distribution Company, Inc.; Warner Brothers Distributing Corporation; Paramount Pictures Corporation; Twentieth Century-Fox Film Corporation.

**2.** An eleventh distributor, American International Pictures, although not named as a defendant by L.C.L., joined as a counterclaimant in August, 1974.

proportions has been perpetrated" and that contracts between L.C.L. and the various distributors had been reached. These findings are abundantly supported by the evidence and require no further discussion.

After oral argument in Fort Worth on November 7, 1977, we are convinced that the salient feature of the case as it comes to us on appeal is the manner in which the District Court applied the Texas statutes of limitation.

The counterclaim asserted both fraud and breach of contract in underreporting gross box office receipts, which would reduce payments below the amounts actually due the distributors. Breach of contract was grounded on licensing agreements between L.C.L. and the respective distributors. These were *separate* licensing agreements, in which each distributor *independently* licensed pictures to L.C.L. for exhibition. Licensing was based on a specified "flat" rental fee per film or on a percentage of the gross box office receipts.

The distributors contended that L.C.L. knowingly concealed a portion of the gross admission receipts on films licensed on a percentage rate, with the intent of inducing the distributors to accept less film rental than actually due and to grant licenses on a lower percentage basis; that such underreporting constituted fraud and breached the license agreements. As already stated, the District Court sustained these contentions and that action is affirmed.

The District Court, rejecting efforts to invoke the statute of limitations, allowed recovery all the way back to 1966 and therein lies the problem with this case.

■ Since the District Court had jurisdiction over the distributors' counterclaim pursuant to pendent jurisdiction and diversity of citizenship under 28 U.S.C., § 1332, the Texas law on the statute of limitations controls, *Guaranty Trust Company v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Goodbody and Company v. McDowell*, 5 Cir., 1976, 530 F.2d 1149.

Five general principles embodied in Texas statutes of limitation are of importance here.

■ When a contract is partially written and partially oral, the contract will be treated as an oral contract, and two year statute of limitations will apply, *Nelms v. Chazanow*, 404 S.W.2d 359 (Tex.Civ.App., 1966); *Barbier v. Barry*, 345 S.W.2d 557 (Tex.Civ.App., 1961).

■ The two year statute of limitations applies to an action for damages based upon fraud, *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438 (1940); *Ryan v. Collins*, 496 S.W.2d 205 (Tex.Civ.App., 1973).

■ A cause of action for breach of contract begins to run at the time of the breach unless the existence of the breach is fraudulently concealed. *See Shipp v. O'Dowd*, 454 S.W.2d 845 (Tex.Civ.App., 1970).

■ A cause of action for fraud accrues at the time the fraud is perpetrated unless the fraud is concealed from or is not known to the injured party, *Quinn v. Press, supra.*

■ Although fraud tolls the statute of limitations, the statute begins to run at the time the fraud is discovered *or should have been discovered* (emphasis ours) in the exercise of due diligence, *Pan American Petroleum Corporation v. Orr*, 5 Cir., 1963, 319 F.2d 612; *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738 (1943); *Bush v. Stone*, 500 S.W.2d 885 (Tex.Civ.App., 1973); *Pena v. First State Bank and Trust Company*, 404 S.W.2d 56 (Tex.Civ.App., 1966).

The license agreements between the distributors and L.C.L. are both written and oral. Accordingly, the two year statute of limitations will apply to the breach of contract count. Likewise, the two year statute of limitations controls the fraud count. The breaches and the fraud were concealed from the distributors. Recovery by the distributors, therefore, is not barred until two years after the discovery of the breach and/or fraud or until the fraud should have been discovered by the exercise of reasonable diligence.

No steadfast rule exists to determine whether an injured party has exercised the degree of due diligence necessary to toll the statute of limitations. Nor is there a definite group of fact situations which automatically warrant a finding of knowledge of fraud which will activate the running of the statute of limitations. The point in time at which the fraud should have been discovered depends upon the facts of each case. Ultimately, the issue of due diligence will be resolved by such facts. *See Pan American Petroleum Corporation v. Orr, supra; Ruebeck v. Hunt, supra.*

The Texas courts have formulated guidelines to aid in the determination of whether an injured person has exercised the degree of diligence necessary to prevent the running of the statute of limitations.

■ One will not be charged with knowledge of fraud merely because he has had the opportunity or power to investigate the fraud; *he must be cognizant of facts that would have caused an ordinary, reasonable person to investigate.* As a matter of law, knowledge of facts which would have ignited an inquiry by a reasonably prudent person and if pursued with reasonable diligence would have resulted in the discovery of fraud, *is equivalent to knowledge of the fraud, Pan American Petroleum Corporation v. Orr, supra; Ruebeck v. Hunt, supra.*

The distributors contended that even in the exercise of due diligence the underreporting could not have been discovered until early 1973. They rely upon the information derived from the 1972 audit, which when compiled and analyzed indicated substantial underreporting. According to the distributors, without the information obtained through the 1972 audit, without the post-audit analysis, and without the results of the blind checks intensified in the fall of 1971 which led to the 1972 audit, the systematic and substantial underreporting *could* not have been discovered. Arguably, the extent of the fraud was not discovered

for a positive fact until the spring of 1973 when the post-audit analysis became available.

The applicable Texas statute of limitations, however, has another leg upon which it may run, *i. e.,* when, in the exercise of due diligence, the fraud should have been discovered. It is this latter leg upon which this case must be decided and which necessitates reversal of the judgment under review.

■ The District Court found, 421 F.Supp. at 1100, that "The substantial and continuous pattern of underreporting was not discovered, nor could it have been discovered in the exercise of due diligence, until early in 1973, after the intensified checking results were received, an audit had been completed, and the post-audit analysis made.

From the record in this case, this finding is clearly erroneous.

At various times since the late nineteen forties, L.C.L. had been accused of underreporting admission receipts. In 1948, 1956, and 1962, lawsuits were brought against L.C.L. (and other film exhibitors of which John G. Long was part owner) to recover license fees not paid because of underreporting. The lawsuits were settled out of court. Pursuant to the 1956 settlement, L.C.L. promised to pay $36,591.50 for license fees not paid, January 1, 1953 to April 27, 1956. Under the 1962 settlement, L.C.L. agreed to pay $270,665.02 for film rental withheld from January 1, 1956 to February 28, 1962. Indeed, the trial court found, 421 F.Supp. 1093, that "since 1948, the Long circuit has paid in excess of $700,-000.00 in settlement of claims for under-reporting".

The period of alleged unreporting involved in the present litigation occurred between January 1, 1966 and November 19, 1973. The distributors, through Sargoy, Stein & Hanft, conducted 146 blind checks[3]

---

**3.** A blind check occurs when a distributor without the knowledge of the local theatre management sends someone to count the attendance of that theatre. A distributor will then compare

the checker's attendance count with the box office receipts reported by the exhibitor to determine if the exhibitor underreported attendance and, indirectly, box office receipts.

between 1966 and 1973. Over half (79) of these checks revealed a discrepancy between the theatre's reported attendance figures and the checker's reported attendance figures. Forty-nine of the 146 blind checks were conducted more than two years prior to the filing of the distributors' counterclaim, of which thirty-four revealed discrepancies. Ninety-seven blind checks were conducted within the two years prior to the filing of the counterclaim, of which forty-five showed apparent discrepancies.

More importantly, as early as April 9, 1966, a blind check evidenced a discrepancy between the theatre's reported box office receipts and the checker's attendance count. By early 1968, the distributors had knowledge of six blind checks showing similar discrepancies. The number of blind checks conducted was increased during the fall of 1971. In November, 1971, Hanft was notified of the results of the blind checks. Because of the discrepancies revealed by the blind check comparisons, Hanft ordered an audit of L.C.L.

The audit of L.C.L. was conducted in the fall of 1972. This audit furnished the distributors with L.C.L.'s admission figures for unchecked exhibitions, income figures for each theatre, and concession expenses and receipts. Additionally, this audit revealed that instead of using serially numbered tickets, L.C.L. specially ordered tickets with only a single digit, from 0 to 9 thereon. If a serially and consecutively numbered ticket had been used and if each person who had entered was given a ticket, attendance could have been readily determined. Such an admission ticket is one of the most accurate checks on box office receipts.[4] The post-audit analysis completed in the spring of 1973 revealed substantial and continuous underreporting.

From these facts it must stand undisputed that for at least fifteen years prior to

1966 the distributors were well aware of L.C.L.'s consistent policy of habitually underreporting. Not only did the distributors know of it but they made L.C.L. and associates pay for it. The checks which turned up the same old discrepancies in 1966, and thereafter, gleamed like lightning flashes in a heavy thunderstorm. All the time, the distributors had the same means and methods available that had uncovered the prior discrepancies with which the distributors were all too familiar. Frequent blind checks and audits were available. For reasons satisfactory to them, the distributors chose to act as if they had not seen the lightning. This they were free to do but they could not use it as a means of extending the statute of limitations. On any reasonable view of the facts it is absolutely certain that from and after 1966 the distributors were on notice of the necessity for due diligence, that they had the means of exercising it, and that they took no action against L.C.L. Statutes of limitation may not be avoided or extended in such manner, even in cases of fraud. The Texas two year statute of limitations, Article 5526, Texas Revised Civil Statutes Annotated,[5] most assuredly applied to the counterclaims.

The distributors, however, convinced the District Court that the situation was governed by Article 5539c of the Texas Revised Statutes, which reads as follows:

"Art. 5539c. Counterclaims and cross claims; period of limitation; extension

"In the event a pleading asserting a cause of action is filed under circumstances where at the date when answer thereto is required by law a counterclaim or cross claim would otherwise be barred by the applicable statute of limitation, then the party so answering may, within 30 days following such answer date file a counterclaim or cross claim in such cause

---

4. From January 1, 1966 to November 20, 1973, L.C.L. purchased over five million single digit numbered tickets but was unable to account for over 240,000 tickets.

5. Texas Revised Civil Statutes, Annotated, Article 5526 (Vernon 1958) provides:

There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

\* \* \* \* \* \*

4. Actions for debt where the indebtedness is not evidenced by a contract in writing.

and the period of limitation is hereby extended for such period of time provided that the counterclaim or cross claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim.

"Acts 1969, 61st Leg., p. 701, ch. 240, eff. Sept. 1, 1969."

The Court held, 421 F.Supp. at 1101:

"The Long Circuit urges that Art. 5539c applies only to counterclaims not barred on the filing date of the complaint but barred by the answer date. There is no record from which a legislative intent can be discerned, nor have the Texas courts answered the question of the applicability of the statute to counterclaims time barred on the date the complaint is filed. * * * The weakness with The Long Circuit's argument is that the language of the statute does not limit its benefits to claims barred only at the answer date. The counterclaim arose from the same facts and transaction as the complaint; indeed, the assertion in concert by the distributors of the present counterclaim is at the heart of the complaint, and by the contention of The Long Circuit was barred on the answer date. The statute requires no more. The use of the word 'extension' in the statute, rather than the word 'revival' or other words of similar import, is not significant. Art. 5539c literally allows the assertion of counterclaims which have by answer date been barred, though not barred on the complaint date. In that sense, even under The Long Circuit's construction, 'extension' is the wrong word. Contrary to The Long Circuit's contention, the filing of a suit does not open a plaintiff to any stale counterclaim. Only those counterclaims arising out of the same transaction as the complaint may be asserted. Long urges that the legislature would not have intended the irrational result of allowing this counterclaim. To allow a party to assert a claim otherwise barred when another insists upon suing about the transaction can hardly be described as an irrational legislative intent."

The District Court pointed out that the statute has no legislative history. The Texas courts of last resort in the eight years since its enactment have had no occasion to illuminate its meaning as to a case of the kind we now have before us. We recognize that the trial judge's familiarity with state law in a diversity case is entitled to great deference, *Devers v. Mobil Chemical Corporation,* 5 Cir., 1973, 488 F.2d 258. Being relegated, however, as was the District Court, to the plain language of the statute we must respectfully disagree with the analysis it chose to follow.

■ We do not think the statute had any application to the case. The rights of the distributors to recover for breach and fraud committed within the immediately preceding two years were not barred either when the complaint was filed or when the counterclaims were filed. To quote the exact words of the statute, a claim for the past two years was not "otherwise barred" when the counterclaims were filed and Article 5539c had no place in the resolution of the case.

We think this is enough to dispose of the point, but we notice other points which we think are equally dispositive, necessitating the same result.

Upon our reading of the statute, and upon a careful consideration of the only factors which possibly could have motivated the enactment of the statute, we believe that the Professor McElhaney correctly stated its purpose, 24 Sw.L.J. 179, 192 (1970):

"Limitations. New article 5539c, effective September 1, 1969, extends the statute of limitations for an additional thirty days on counterclaims and cross-claims, which otherwise would have been cut off between answer date and the time the original petition was filed. The statute changes the result of cases such as *Morris-Buick Co. v. Davis,* which denied the right to affirmative recovery upon such a counterclaim, and only allowed it to be pleaded defensively to the extent that it defeated the plaintiff's right to recovery. However, the protection of the statute

extends only to counterclaims and cross-claims which arise out of the same transaction or occurrence upon which the plaintiff's suit is based."

Finally, we have grave doubts that the counterclaim, based on innumerable licenses for various and sundry films, with sundry instances of underreporting from various theatres, arose, as the statute required, "out of the same transaction or occurrence upon which the plaintiff's suit is based". We need not base our decision on this point, however, for either of the first two, or they both, are enough to necessitate the conclusion that Article 5539c had no part in the correct resolution of this litigation.

We therefore conclude, and so hold, that the amount of damages recoverable under the counterclaims were only those which by a preponderance of the evidence could be shown to have been sustained during the two years immediately preceding the filing of the counterclaims.

### Conclusion

On liability of L.C.L. for the two years immediately preceding the filing of the counterclaims, the judgment of the District Court is affirmed.

As to liability for preceding years, the judgment of the District Court is reversed.

As to the personal liability of John G. Long, the record shows that he is an 81 year old man and there is evidence from which the Court could have found that he had little or nothing to do with the operations during the two year period for which the distributors are entitled to recover. We therefore vacate the judgment against him and remand for further consideration limited to his conduct during the permissible two year term and under the usual rules of evidence in such cases.

As to the amount of damages for breach of the various contracts and the fraud with reference thereto, the damages due each distributor individually will be computed from the evidence adduced at the new trial, with appropriate findings of fact and conclusions of law, this being a non-jury case.