Jack O. **HENDRICKSON** Marjorie Hendrickson, Plaintiffs,

v.

**PEABODY COAL COMPANY** Peabody Development Company Peabody Holding Company, Inc., Defendants.

No. CIV.A. 4:95–CV–224–M.

United States District Court, W.D. Kentucky, Owensboro Division.

Oct. 7, 1997.

Allen P. Dodd, III, Dodd & Dodd, Louisville, George E. Stigger, III, Cubbage & Stigger, Henderson, George A. Barton, Rasmussen, Barton & Willis, LLC, Kansas City, MO, for Jack O. Hendrickson, plaintiff.

W. Stanley Walch, Lawrence C. Friedman, Stephen R. Welby, Christopher M. Hohn, Thompson & Mitchell, St. Louis, MO, Winfrey P. Blackburn, Jr., Blackburn, Hundley & Domene, Louisville, KY, for Defendants Peabody Coal Company, Peabody Development Company.

Otterbein Hendrickson, Newburgh, IN, Pro se.

Vera Lou Kippel,Boonville, IN, Pro se.

Donald Hendrickson, Boonville, IN, Pro se.

Christopher M. Hohn, Thompson & Mitchell, St. Louis, MO, for Defendant Peabody Holding Co.

## MEMORANDUM OPINION AND ORDER

McKINLEY, District Judge.

This matter is before the Court upon the motion by Defendants, Peabody Coal Company, Peabody Development Company, and Peabody Holding Company, Inc. (hereinafter collectively "Peabody"), for summary judgment [DN 64]. Fully briefed, this matter is now ripe for decision.

### Facts

On April 16, 1966, Garry O. Hendrickson, Ona Hendrickson, William O. Hendrickson, Annizene Hendrickson, Olive Lewellyn, and Norman Lewellyn, as lessors, and Sentry Royalty Company, as lessee, entered into a coal mining lease ("1966 Lease Agreement") of certain properties in Warrick County, Indiana. Peabody Coal Company is a successor in interest to Sentry Royalty Company. The rights of the lessors under the Lease Agreement were subsequently assigned in various percentage interests to Plaintiffs, Jack Hendrickson, Marjorie Hendrickson, and others.[1]

Under the terms of the 1966 Lease Agreement, Peabody agreed to pay to the lessors a royalty calculated as a percentage of the "average invoice sales price" of coal mined from the leased premises. The Lease required Peabody to submit each month to the lessors "a statement of all coal mined, removed and sold from Subject Lands during the preceding calendar month, and to accompany such statement with payment for any Earned Royalties due hereunder." 1966 Lease Agreement, Article II, Section 4. Peabody sent the lessors a check stub indicating the amount of tons mined each month, the royalty rate, and the amount of royalty being paid in

---

1. On his death, William O. Hendrickson, one of the original lessors, bequeathed his interest under the Lease to his sons, Jack O. Hendrickson and James W. Hendrickson. The interest of James W. Hendrickson passed on his death to his wife, Marjorie Hendrickson.

the accompanying check. After William Hendrickson's death in 1984, the royalties were paid to his estate. The Plaintiffs never received monthly statements.

In 1977, Congress passed the Federal Surface Mining and Control Reclamation Act ("SMCRA") which imposed a "reclamation fee" on all operators of coal mines effective August 3, 1977. 30 U.S.C. § 1232. In 1978, Congress enacted the Black Lung Benefits Excise Tax, which assessed a tax on each ton of coal produced and sold in the United States after March 31, 1978. 26 U.S.C. § 4121. Both of the taxes were imposed on Peabody Coal as an operator.

Peabody mined coal under the Lease Agreement during the years 1977–78, 1984, and 1986, and paid royalties to the Plaintiffs' predecessors during those years and made the final royalty payment in January, 1986. When calculating royalties payable under the Lease, Peabody did not include the amounts equal to the Federal Reclamation Fee and the Black Lung Tax as part of the "average invoice sales price" of coal. The Lease does not provide whether the taxes should be included when calculating royalties because the taxes were not enacted until almost twelve years after the execution of the Lease.

In addition to the right to receive monthly statements, the Lease Agreement contained audit and inquiry rights to ensure the accuracy of the royalty payments:

The Lessee agrees that the Lessors shall have the right to check all books and records of the Lessee bearing upon the accuracy of the monthly statements to be rendered by the Lessee to the Lessors, pursuant to the provisions of Section 4 of Article II hereof.

The Lessors shall further have the right, either themselves or through their agents or attorneys, to inspect all operations of the Lessee insofar as they reflect upon the accuracy of such statements. The Lessors, their agents and attorneys, shall have the right of ingress and egress for such purpose.

1966 Lease Agreement, Article VI. Plaintiffs never invoked this audit clause.

Plaintiffs claim that Peabody breached the 1966 Lease Agreement when it deducted the amounts equal to the Federal Reclamation Fee and the Black Lung Tax from the sales price of the coal in Peabody's calculation and payment of royalties to Plaintiffs. Additionally, Plaintiffs also assert that Peabody committed actual and constructive fraud.

Defendants move for summary judgment arguing that (1) Plaintiffs are time-barred as a matter of law from asserting their breach of contract claim (Count 1); (2) Plaintiffs cannot recover under a theory of constructive fraud because no confidential relationship existed between the parties; and (3) Plaintiffs cannot recover under a theory of actual fraud because Plaintiffs did not rely or had no right to rely on Peabody's alleged misrepresentation.

## Standard For Summary Judgment

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The inquiry under Fed.R.Civ.P. 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party seeking summary judgment bears the initial responsibility for informing the Court of the basis for its motion which the party believes demonstrates the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. A proper summary judgment may be opposed by any evidentiary material listed in Fed. R.Civ.P. 56(c), except for the mere pleadings. *Id.* at 324, 106 S.Ct. 2548. Evidence of a nonmovant is to be believed, "and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the nonmoving party's case, such as proof by clear and convincing evidence, must be satisfied by the nonmoving party. *Street,* 886 F.2d at 1479–80. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, the motion for summary judgment should be granted." *Pitts v. Michael Miller Car Rental,* 942 F.2d 1067, 1069–70 (6th Cir.1991) (citing *Matsushita Elec. Ind. Co. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### Statute of Limitations

Defendants assert that Plaintiffs are time-barred from asserting their breach of contract claim because Plaintiffs filed suit more than nine years after the final payment of royalties by Peabody under the 1966 Lease Agreement. Defendants claim that Indiana's six-year statute of limitations applicable to actions for "use, rents, and profits" bars the contract claim. I.C. § 34–1–2–1.[2] Plaintiffs disagree arguing that this is a breach of contract claim

based upon Peabody's failure to pay the full amount of royalties due on coal actually mined and sold for the leased premises. According to Plaintiffs, the 1966 Lease Agreement at issue is clearly a "contract[ ] in writing other than those for the payment of money entered into before September 1, 1982," I.C. § 34–1–2–2(6), and thus, the applicable statute of limitations for Plaintiffs' breach of contract claim is twenty years.[3]

■  A determination of when a cause of action accrues is a question for the Court. *Doe v. United Methodist Church,* 673 N.E.2d 839, 842 (Ind.App.1996). "[W]here the undisputed facts show that the complaint was filed after the running of the applicable statute of limitations, the court shall enter judgment for the defendant." *Id.* at 841.

■  Under Indiana law, "[t]he substance of the action, rather than its form, determines the applicable statute of limitations." *INB National Bank v. Moran Elec. Service, Inc.,* 608 N.E.2d 702, 706 (Ind.App.1993). "[T]he applicable statute of limitations 'should be ascertained by reference to the nature of the harm alleged rather than by reference to the theories of recovery. In other words, the applicable statute of limitations is ascertained by identifying the nature or substance of the cause of action and not by the form of the pleadings.'" *O.K. Sand and Gravel, Inc. v. Martin Marietta Corp.,* 786 F.Supp. 1442, 1448 (S.D.Ind.1992)(quoting *Whitehouse v. Quinn,* 477 N.E.2d 270, 273 (Ind.1985)).

■  First, the Court concludes that the nature or substance of the cause of action in question is one for the underpayment of royalties and therefore, the six-year stat-

---

**2.** I.C. § 34–1–2–1 provides as follows:

The following actions shall be commenced within six [6] years after the cause of action has accrued, and not afterwards.... For use, rents, and profits of real property.

**3.** I.C. § 34–1–2–2(6) provides in part as follows:

[U]pon contracts in writing other than those for the payment of money entered into before September 1, 1982, not including chattel mortgages, deeds of trust, judgments of courts of record, or for the recovery of the possession of real estate, the action must be commenced within twenty [20] years.

ute of limitations for actions for "use, rents, and profits of real property" applies. I.C. § 34–1–2–1. Pursuant to the 1966 Lease Agreement, the Plaintiffs leased and demised to Peabody certain lands described in the Agreement. In consideration for those rights, Peabody agreed to pay Plaintiffs "certain royalties or rentals."[4]

Royalty is defined as a " 'share of product or profit reserved by owner for permitting another to use the property .... In mining and oil operations, a share of the product or *profit* paid to the owner of the property.' " *Bicknell Minerals, Inc. v. Tilly,* 570 N.E.2d 1307, 1313 (Ind.App.1991)(emphasis added). In *Bicknell,* the court recognized that in coal mining leases the term "rent" and "royalty" are often used interchangeably to convey the same meaning: "The terms 'rent' and 'royalty,' as a result of usage and custom, are frequently, although not technically or accurately, employed interchangeably in mining leases to convey the same meaning, and ordinarily the 'royalties' in the case of such leases constitute rent ...." *Bicknell Minerals,* 570 N.E.2d at 1313 (quoting 58 C.J.S. Mines and Minerals, § 185 (1948)) (noting that "royalty" is a more appropriate term where rental is based on the quantity of coal or other mineral that is or may be taken from a mine). Therefore, an action for the underpayment of royalties is one for "use, rents, and profits of real property."

This position is supported by the opinion of the United States District Court for the Southern District of Indiana in a parallel suit. In *Hemenway v. Peabody Coal Company,* Civil Action No.:EV:92–141–C (S.D.Ind.1993) (on appeal), the district court held that Count I of plaintiffs' complaint clearly sought recovery of royalties due under the lease agreement and was governed by the six-year statute of limitations found in I.C. § 34–1–2–1 for recovery of use, rents, and profits of real property.

The Court agrees with the conclusion of the district court in *Hemenway.*

Second, in the alternative and in contrast with the district court's reasoning in *Hemenway,* this Court finds that I.C. § 34–1–2–2(6) could also apply to this action. In *Hellyer Communications, Inc. v. WRC Properties, Inc.,* 888 F.Supp. 94 (S.D.Ind.1995), the district court was faced with a similar question. The Court analyzed a written lease agreement for the payment of rent under both I.C. §§ 34–1–2–1 and 34–1–2–2(6). The defendant maintained that the substance of the complaint was a claim for "rents" and therefore the six year statute of limitations period of I.C. § 34–1–2–1 would apply. However, plaintiff asserted that the action of the defendant was a breach of the terms of the written Lease Agreement which constitutes a breach of contract claim governed by I.C. § 34–1–2–2(6) and, therefore, the twenty year statute of limitations would apply.

The court in *Hellyer* initially held that the substance of the cause of action was for the payment of rents. However, the district court conceded that the action was also based on the violation of the terms of the lease that comprised a claim for breach of contract. While concluding that arguably both statute of limitations could apply, the district court noted that "fundamental rules of statutory construction require that specific statutes of limitations prevail over more general statutes." *Id.* at 96 n. 3 (citing *State v. Lake Superior Court,* 500 N.E.2d 737, 739 (Ind.1986); *Horne v. State,* 572 N.E.2d 1333, 1335 (Ind.App. 1991); *Northern Indiana Public Service Co. v. Fattore Const. Co.,* 486 N.E.2d 633, 634 (Ind.App.1985), *overruled on other grounds, Berns Const. Co. v. Miller,* 516 N.E.2d 1053 (Ind.1987)). "[E]ven though the lease provides the basis of Hellyer's claims, the specific nature of the requested relief is for rent." *Id.* at 95–96.

---

4. "In consideration of all of the rights herein granted to Lessee, the Lessee agrees to pay the Lessors certain royalties or rentals, ...." 1966 Lease Agreement, Article II.

Therefore, the Court concludes that in the present case, the specific statute concerning actions "[f]or use, rents and profits of real property" should prevail over the general limitations provisions for breach of contract actions. *Hellyer*, 888 F.Supp. at 96 n. 3. *See also Ferguson v. Modern Farm Systems, Inc.*, 555 N.E.2d 1379 (Ind. App.1990) ("When two or more statutes deal with the same subject matter, the statute which is more recent and specific will prevail over the older more general one." *Id.* at 1383–84).

Section 34–1–2–1 provides that a plaintiff may bring suit any time within six years of the accrual of the cause of action. *See Hellyer*, 888 F.Supp. at 96. Plaintiffs' cause of action accrued on the date each royalty payment was due.

*Fraudulent Concealment*

Plaintiffs argue that even if the six year statute is applicable, the statute of limitation was tolled due to Peabody's concealment of material facts. I.C. § 34–1–2–9 provides that "[i]f any person liable to an action shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause of action."

In support of the their claims of concealment, Plaintiffs state that "Plaintiffs' Second Amended Complaint plainly alleges that Peabody concealed the material facts giving rise to Plaintiffs' breach of contract claims." Plaintiffs' Response at 14–15. Plaintiffs may not simply rely on the allegations in their Complaint to create a factual dispute, but must "present affirmative evidence in order to defeat a properly supported motion for summary motion." *Street*, 886 F.2d at 1477.

■ Additionally, "[t]he concealment must be active and intentional: mere silence on the part of the defrauder will not constitute concealment without a duty to speak. (citations omitted) The affirmative acts of concealment must be calculated to mislead and hinder plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation." *Forth v. Forth*, 409 N.E.2d 641, 644–45 (Ind.App.1980). As noted by the court in *Forth*, concealment need not be done through affirmative acts where a fiduciary or confidential relationship exists giving rise to a duty to disclose material information between the parties. *Id.* at 645. As discussed below, the Court finds no fiduciary duty owed by Peabody.

■ The Court concludes that the record is void of any evidence of such concealment, especially where Section VI of the Lease Agreement gave Plaintiffs' inspection and audit rights. *See Hemenway v. Peabody Coal Co.*, Civil Action No.:EV:92–141–C (S.D.Ind. May 27, 1993); *Begley v. Peabody Coal Co.*, Civil Action No.: EV: 92–105–C (S.D. Ind. April 21, 1993). The Court concludes that as a matter of law I.C. § 34–1–2–9 does not apply to the facts of this case.

*Discovery Rule*

■ According to Plaintiff, the discovery rule applies to all claims subject to I.C. § 34–1–2–1.[5] "It would be wholly incongruous to interpret IC 34–1–2–1 as requiring the discovery rule in tort cases but not in other cases covered by the particular statute of limitations." *Habig v. Bruning*, 613 N.E.2d 61 (Ind.App.1993). Therefore, the Hendricksons' claim accrued, and the statute of limitations began to run, when the Hendricksons "knew, or in the exercise of ordinary diligence, could have discovered," the alleged miscalculation of royalties under the Lease Agreement. Plaintiffs assert that the "Second Amended Complaint specifically alleges that Plaintiffs did

---

**5.** "Despite the fact-specific nature of this inquiry, the point at which a cause of action accrues may be determined as a matter of law if the relevant facts are undisputed and lead to but one conclusion." *Horn v. A.O. Smith*, 50 F.3d 1365, 1370 (7th Cir.1995). "If the accrual determination turns on the resolution of factual questions, however, summary judgment is inappropriate, and the statute of limitations issue must be submitted to a jury . . . ." *Id.*

not learn of Peabody's practice of deducting the taxes and other costs from the average invoice price in the calculation of Plaintiffs' royalties until after January 1, 1990." Plaintiffs' Response Brief at 15.

The Plaintiffs assertion is insufficient to raise a factual dispute regarding when the Hendricksons, in the exercise of due diligence, could have discovered the miscalculations. No evidence exist that William O. Hendrickson, their predecessor and original Lessor, was uninformed about the treatment of taxes under the lease. Pursuant to the 1966 Lease Agreement Section VI, Plaintiffs had an audit right which allowed them to inspect all books and records of Peabody bearing upon the accuracy of monthly statements. No evidence exists whether Plaintiffs predecessors exercised their audit and inspection rights. In fact, in 1977 Plaintiffs predecessors entered into a similar lease agreement with Ideal Basis Industries and specifically excluded the taxes from the sales price of coal. As early as 1977, the Hendricksons knew that the taxes were in existence and understood that they could affect royalty payments. Plaintiffs have set forth no specific facts which establish a genuine issue of material fact regarding when their cause of action accrued. Mere conclusory allegations are insufficient to survive a motion for summary judgment. Plaintiffs may not simply rely upon the allegations in their Complaint to create such a factual conflict. *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 458–59 (6th Cir.1986). Additionally, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street,* 886 F.2d at 1479–1480.

For the reasons see forth above, the Court finds that the Plaintiffs' breach of contract claim is time-barred pursuant to I.C. § 34–1–2–1 and summary judgment is granted in favor of the defendants on this issue.

## Constructive Fraud

Plaintiffs allege that Peabody "concealed" or "failed to disclose" how Peabody was calculating royalties. Plaintiffs claim that Peabody was in a "superior position of knowledge" and owed a "fiduciary duty" to them. Plaintiffs assert that Peabody had a duty to disclose the fact that Peabody was deducting the taxes and other costs from the "average invoice sales price" in calculating and paying royalties. Second Amended Complaint at ¶¶ 25–26.

"Constructive fraud is the breach of a legal or equitable duty which is fraudulent as a result of its tendency to deceive others, to violate a public or private trust, or to injure public interests." *Comfax Corp. v. North American Van Lines, Inc.,* 587 N.E.2d 118, 125 (Ind.App. 1992). "The elements of constructive fraud are 1) a duty existing by virtue of the relationship between the parties, 2) representations or omissions made in violation of that duty, 3) reliance thereon by the complaining party, 4) injury to the complaining party as a proximate result thereof, and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party." *Biberstine v. New York Blower Co.,* 625 N.E.2d 1308, 1315 (Ind.App.1993). "In constructive fraud, the law infers fraud from the relationship of the parties and the circumstances which surround them." *Comfax,* 587 N.E.2d at 125.

Constructive fraud may be established where one party takes an unconscionable advantage of his dominant position in a confidential or fiduciary relationship, such as in the relationship between a lawyer and client. "The existence of [an] arm's length business transactions precludes a finding that a confidential relationship exists between these parties." *Hemenway v. Peabody Coal Co.,* Civil Action No.:EV:92–141–C (S.D.Ind. May 27, 1993); *Comfax,* 587 N.E.2d at 125–26.

After examining the Lease Agreement, the Court cannot conclude that the parties intended to create a fiduciary relationship between themselves. Judge

Leonard Hand described the relationship between a lessor and lessee as follows: "A lessee owes no duty to his lessor beyond those contained in the lease; he does not assume to act for him in any particular; only to perform the express promises which it contains." *Flat–Marks Realty Corp. v. Silver's Lunch Stores,* 74 F.2d 210, 211 (2d Cir.1934), *cert. denied,* 294 U.S. 731, 55 S.Ct. 640, 79 L.Ed. 1260 (1935).

The Court finds that the Lease Agreement did not create a duty on the part of Peabody to act primarily for the Plaintiffs' benefit in matters connected with the Lease Agreement. The Lease Agreement is an arm's length contractual agreement. The Lease Agreement imposed duties, rights, and obligations among the parties, including the duty of Peabody to calculate the royalty payments pursuant to the specific terms of the Agreement. The Royalty Agreement did not impose an obligation on the part of Peabody to disclose the exact method of calculation. *See Willits v. Peabody Coal Co.,* 4:90–CV–34–C (W.D.Ky. August 6, 1996); *Johns Hopkins Hospital v. Peabody Coal Co.,* 920 F.Supp. 738 (W.D.Ky.1996).

■ Additionally, the Court rejects Plaintiffs' argument that Peabody's position of superior knowledge obligates Peabody to disclose material facts regardless of whether there is a fiduciary relationship between the parties.[6] The well established rule is that there is no liability for failure to disclose material facts unless there is a duty to do so. *Willits v. Peabody Coal,* 4:90–CV–34–C (W.D.Ky. August 6, 1996); *Rice v. Strunk,* 670 N.E.2d 1280, 1284

(Ind.1996); *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991)(A claim for constructive fraud depends upon the existence of a duty running from defendants to plaintiffs. In absence of such a duty, Plaintiffs cannot recover under constructive fraud.)

### Actual Fraud

Defendants assert that Plaintiffs did not as a matter of law rely on Peabody's misrepresentation because (1) Plaintiffs have testified that they did. not see, or even receive, the check stubs upon which Plaintiffs predicate their actual fraud claims, (2) Plaintiffs failed to take any action in reliance upon Peabody's statements, and (3) Plaintiffs have no right to rely on any representation because of their contractual audit rights pursuant to the 1966 Lease Agreement, Article VI.[7]

■ To prevail in an actual fraud claim under Indiana law, a Plaintiff must prove the following elements: "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Lawyers Title Ins. Corp. v. Pokraka,* 595 N.E.2d 244, 249 (Ind.1992). A complaint failing to allege any of these elements fails to state a claim upon which relief can be granted. *Dryden v. Sun Life Assurance Co. of Canada,* 737 F.Supp. 1058, 1068 (S.D.Ind.1989), *aff'd,* 909 F.2d 1486 (7th Cir.1990).

---

**6.** Indiana courts have recognized that " 'a confidential relationship between the parties is not essential to the findings of constructive fraud, as Indiana recognizes the concept of "fraud in law" or "legal fraud" wherein the key emphasis is the inherent likeliness of conduct to create an injustice.' " *Schwartz v. Oberweis,* 826 F.Supp. 280, 288 (N.D.Ind. 1993); *Stoll v. Grimm,* 681 N.E.2d 749, 757 (Ind.App.1997); *Wright v. Pennamped,* 657 N.E.2d 1223, 1233 (Ind.App.1995). For instance, "[t]he law recognizes that in a buyer-seller relationship one party may be in the

unique possession of knowledge not possessed by the other and may thereby enjoy a position of superiority over the other. The relationship is therefore one which incurs a duty of good faith and fair dealing." *Mullen v. Cogdell,* 643 N.E.2d 390, 401 (Ind.App.1994). In the present case, no material facts are shown which would create the relationship or duty required to sustain Plaintiffs' claim.

**7.** The Court's discussion of reliance applies equally to the constructive fraud claim.

While several cases set forth reliance as a necessary element of a fraud claim, virtually no Indiana law exists to offer guidance on the prerequisites for establishing reliance under the facts of the present case. Faced with the same issue, the United States District Court for the Southern District of Indiana in *Hemenway v. Peabody Coal Company* found that Plaintiffs had failed to plead any action taken by the plaintiffs in reliance upon any alleged misrepresentation taken by Peabody. *Hemenway v. Peabody Coal Company,* Civil Action No.:EV:92–141–C (S.D.Ind. May 27, 1993)(on appeal)(Motion to Dismiss) (relying on *Begley v. Peabody Coal Company,* Civil Action No.:EV:92–105–C (S.D. Ind. April 21, 1993)). In *Begley,* the court found that in order to state a claim for actual fraud the Plaintiffs were required to allege or show some "affirmative action in reliance on a misrepresentation by the defendant." *Id.* The court based its decision on three Indiana cases. *See Whiteco Properties, Inc. v. Thielbar,* 467 N.E.2d 433 (Ind.App.1984); *Fleetwood Corp. v. Mirich,* 404 N.E.2d 38 (Ind.App. 1980); *Dryden,* 737 F.Supp. 1058.[8]

Additionally, the Court rejected the argument that Plaintiffs' failure to inspect the books and records of the defendant constituted affirmative action, in light of the language of the Lease granting Plaintiffs' the inspection and audit rights. According to the court in *Begley,* "[a] mere failure to disclose the opinions of its management (as to whether taxes not in existence or contemplated at the time the Lease was signed and imposed upon Peabody by governmental authorities could be

made a part of the 'average invoice sales price' under the terms of the Lease) is insufficient to constitute action by Peabody which prohibited plaintiffs from exercising inspection rights." *Id.* "There is nothing to indicate that plaintiffs' failure to inspect the books and records was premised on a misrepresentation by the defendant." *Id.* The Court adopts the holding of the district court in *Hemenway* and *Begley.*

According to Defendants, Plaintiffs never received nor saw the "fraudulent" check stubs upon which they predicate their claims for fraud. Therefore, they could not have relied on any misrepresentation by Peabody. Plaintiffs have set forth no evidence in their response to the motion for summary judgment that William O. Hendrickson, their predecessor and an original lessor, was uninformed about the treatment of taxes under the Lease Agreement. J. Hendrickson Deposition at 30; J. Hendrickson (s) Deposition at 34. It is undisputed that the same Hendrickson family members who signed the 1966 Lease Agreement entered into a similar coal mining lease with Ideal Basis Industries in November of 1977. The lease excluded "any sales, severance, land or other taxes not based on net income" from the sales price of the coal. 1977 Lease Agreement, Article II, Section 2. Defendants argue that as early as 1977 the Hendricksons knew the taxes were in existence and understood that they could affect the royalty payments.

According to Plaintiffs, "the reliance element of actionable fraud is satisfied when a plaintiff accepts payments in reliance

8. *Whiteco Properties, Inc. v. Thielbar,* 467 N.E.2d 433 (Ind.App.1984) (Fraud held to exist where developer of real estate promised prospective buyers that property would have unobstructed view of lake. Plaintiffs paid $10,000 more for condominium with the unobstructed view, but did not receive that view); *Fleetwood Corp. v. Mirich,* 404 N.E.2d 38 (Ind.App.1980) (Fraud held to exist where shareholders of a corporation were induced to sell their shares of stock to director of corporation for less than market value); *Dryden v. Sun Life Assur. Co.,* 737 F.Supp. 1058

(S.D.Ind.1989)(Fraud held not to exist. Plaintiff alleged Defendant committed fraud upon life insurance policyholders when Defendant changed method in which dividends would be paid upon polices after policies had been purchased. Change allegedly resulted in detriment to those who had taken out loans on life insurance policy prior to change. Court held that policyholders had taken no action in reliance on any misrepresentation because conduct in taking loans out occurred before any action by Defendant to change method of payment of dividends).

upon representations which intentionally understate the amount due." *Johns Hopkins Hosp. v. Peabody Coal Co.,* 920 F.Supp. 738, 742 (W.D.Ky.1996).[9] The Plaintiffs argue that their Second Amended Complaint adequately alleges the requisite element of reliance. In response to the motion for summary judgment, Plaintiffs argue that:

> Plaintiffs' Second Amended Complaint specifically alleges that Plaintiffs' predecessors-in-interest relied on Peabody to truthfully and accurately report to them the actual selling price of the coal which was mined and sold from the Leased Premises and to truthfully and accurately report to Plaintiffs concerning the amount of royalties due and owing to them. Plaintiffs' Second Amended Complaint, ¶ 15. Plaintiffs' Second Amended Complaint specifically alleges that in reliance on Peabody's fraudulent and misleading monthly statements, and on Peabody's fraudulent concealment and omissions, that Plaintiffs have suffered substantial damages. Plaintiffs' Second Amended Complaint, ¶ 20.

Plaintiffs' Response at 19.

Faced with a properly supported motion for summary judgment, the non-moving party cannot rest on its pleadings to get to the jury, *see* Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505; rather it must "go beyond the pleadings and by ... affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Plaintiff fails to designate specific facts showing that there is a genuine issue of material fact. The Court is not required to speculate as to what portion of the record is being relied upon by the non-moving party, nor is there an obligation for the court to wade through the record for specific facts. *United States v. WRW Corp.,* 986 F.2d 138, 143 (6th Cir.1993).[10]

■ The Plaintiffs have submitted no affidavit, have relied on no deposition testimony, have offered no evidence that anyone relied on the check stubs, offered no evidence refuting Defendants' claims that the Plaintiffs' predecessors had signed other contracts after the enactment of the taxes excluding the taxes from royalties paid and therefore, knew of the existence of these taxes. Instead, the Plaintiffs merely point to their complaint as support of their claim for actual fraud.

■ Additionally, the Court finds that Plaintiffs had no right to rely upon the alleged misrepresentations in light of the of the Lease Agreement granting Plaintiffs' the inspection and audit rights. *See Hemenway v. Peabody Coal Company,* Civil Action No.:EV:92–141–C (S.D.Ind. May 27, 1993); *Begley v. Peabody Coal Company,* Civil Action No.:EV:92–105–C

---

9. The court in *Johns Hopkins* examined the same issue on a motion for summary judgment involving a similar lease under Kentucky law. Similar to the present case, the Court noted that it had not found a Kentucky case addressing reliance on misrepresentations concerning amounts due and owing in accepting payments. The court in finding that "the reliance element of actionable fraud is satisfied when a plaintiff accepts payments in reliance upon representations which intentionally understate the amounts due" relied on *Braswell v. Conagra,* 936 F.2d 1169, 1174 (11th Cir.1991)(plaintiffs justifiably relied on the false weights because Conagra exclusively controlled the weighing process and the plaintiffs accepted the inadequate payment in reliance on the false weights); *Morrill v. Becton, Dickinson and Co.,* 747 F.2d 1217, 1223–

24 (8th Cir.1984) (there was sufficient evidence to support jury findings that Morrill relied on these misrepresentations in accepting the royalty payments); *L.C.L. Theatres, Inc. v. Columbia Pictures Industries,* 421 F.Supp. 1090, 1100 (N.D.Texas 1976) (on all contracts the acceptance by the distributors of the amounts actually paid was in reliance upon the representation that the tendered sums were the agreed-upon percentages), *aff'd in part, rev'd in part,* 566 F.2d 494 (5th Cir.1978). *Johns Hopkins,* 920 F.Supp. at 742.

10. It would appear to this Court that Plaintiffs in their response to the motion for summary judgment utilize the Fed.R.Civ.P. 12(b)(6) standard instead of the summary judgment standard.

(S.D. Ind. April 21, 1993). "To state a cause of action for fraud, a party must prove not only that he acted in reliance but also that he had the right to do so." *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1415 (7th Cir.1986), *cert. denied,* 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987).

Under the 1966 Lease Agreement, the Plaintiffs possessed an audit clause which granted Plaintiffs the rights to inspect all books and records of Peabody bearing upon the accuracy of the monthly statements. According to Peabody, the taxes in question were not treated as part of Peabody's income or as part of the price of coal. When Peabody billed its customers, its invoices specified an amount for the coal and an additional and separate amount for taxes. Peabody argues that had the lessors inquired, they would have confirmed that Peabody did not include taxes in its calculations of royalties. According to Peabody, Plaintiffs do not dispute that they would have learned about the taxes had they inquired. J. Hendrickson Deposition at 31–32; J. Hendrickson (s) Deposition at 36.[11] However, according to Plaintiff, they vigorously dispute the claim that if they had ever made any inquiry to Peabody concerning how Peabody calculated the royalties they would learn that the taxes were not included in the "sales price."[12]

The Hendricksons had at all times an unlimited right of access to Peabody's records. Article VI of the Lease Agreement specifically granted this right. Plaintiffs have not claimed, let alone presented any evidence, that Peabody interfered with the right of inspection. Plaintiffs fail to present any evidence that the failure to disclose the opinion of Peabody's management concerning whether taxes, not in existence at the time of the lease, should be included in the "average invoice sales price" of coal influenced Plaintiffs decisions concerning whether to call for an inspection of Peabody's records. *See Begley v. Peabody,* supra. Finally, it is this Courts opinion that any such reliance by Plaintiffs on Peabody's "fraudulent" check stubs is seriously belied by the fact that Plaintiffs had access to the records that supply such representations.[13]

For the reasons set forth above, and finding no genuine issues of material fact on the issue of actual fraud, the Defendants' motion for summary judgment is granted.

## Conclusion

Based on the foregoing reasons and the Court being sufficiently advised, IT IS HEREBY ORDERED that:

1. The Defendants' Motion for Summary Judgment [DN 64] is granted, and

2. This matter is dismissed with prejudice and stricken from the active docket.

---

11. The full deposition testimony of Jack O. Hendrickson was not provided to the Court. Only portions of Jack O. Hendrickson's deposition was provided by the Defendants.

12. Interestingly, in the next paragraph of their response, Plaintiffs acknowledge that the Beaver Dam Coal Company had a similar lease agreement with Peabody and in 1979 Beaver Dam discovered that Peabody was deducting certain taxes from gross realization in calculating royalties paid to Beaver Dam.

13. This conclusion is consistent with the district court's conclusion in *Johns Hopkins*, 920 F.Supp. 738. In *Johns Hopkins*, the court rejected Peabody's argument that John Hopkins did not have a *right* to rely on Peabody's misrepresentations and concealments because the lease contained an audit clause. The Court held that the audit clause in that particular lease allowed John Hopkins only to inspect Peabody's records relating to the amount of coal mined and sold for the leased premises, not the right to audit Peabody's records concerning the gross sales realization for the coal mined and sold, unlike the audit clause found in *Begley v. Peabody Coal Co.,* Civil Action No.:EV:92–105–C. The audit clause in the present case allowed Plaintiffs to inspect the books and records of Peabody bearing upon the accuracy of the monthly statements. It differs substantially from the audit clause found in the Lease Agreement in *Johns Hopkins.*

THIS IS A FINAL AND APPEAL-
ABLE ORDER AND THERE IS NO
JUST CAUSE FOR DELAY.