Marjorie HENDRICKSON, in her Individual Capacity and Jack O. Hendrickson, Appellants–Plaintiffs,

v.

ALCOA FUELS, INC., Peabody Coal Co., Peabody Development Co., Otterbein Hendrickson, Donald Hendrickson, Vera Lou Kippel and Olive Lewellyn, Appellees–Defendants.

No. 63A04–9910–CV–454

Court of Appeals of Indiana.

Sept. 21, 2000.

George A. Barton, Rasmussen, Barton & Willis, L.L.C., Kansas City, Missouri, John W. Weyerbacher, Weyerbacher, Dewey & Weyerbacher, Newburgh, Indiana, Valentine Fleig, Gray, Fleig & Biesterfield, Petersburg, Indiana, Attorneys for Appellants.

Lee B. McTurnan, Steven M. Badger, McTurnan & Turner, Indianapolis, Indiana, Julie A. Coletti, Pamela W. Connelly, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Pittsburgh, Pennsylvania, W. Stanley Walch, Lawrence C. Friedman, Christopher M. Hohn, Thompson Coburn LLP, St. Louis, Missouri, John B. Drummy, Kightlinger & Gray, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE [1]

Appellants–Plaintiffs Jack O. Hendrickson and Marjorie Hendrickson (hereinafter collectively referred to as "Hendricksons") appeal the trial court's Order granting summary judgment in favor of Alcoa Fuels, Inc. (Alcoa), and Peabody Coal Company, Peabody Development Company, and Peabody Holding Company (hereinafter collectively referred to as "Peabody").

We affirm.

### ISSUES

The Hendricksons raise seven issues for our review, which we consolidate and restate as follows:

1. Whether the trial court erred by concluding that collateral estoppel precludes the Hendricksons from re-litigating the timeliness of their breach of contract claim against Peabody and Alcoa.

2. Whether the trial court erred in granting Peabody's motion for summary judgment on Hendricksons' fraud claims because collateral estoppel precludes the Hendricksons from re-litigating their fraud claims against Peabody.[2]

3. Whether the trial court erred in denying Hendricksons' motion for leave to file a third amended complaint.

### FACTS AND PROCEDURAL HISTORY

We adopt the trial court's findings of fact with respect to Peabody's Motion for Summary Judgment as follows: [3]

#### A. The 1966 Lease with Alcoa Fuels

1. On July 1, 1966, Garry O. Hendrickson, Ona Hendrickson, William O. Hendrickson, Annizene Hendrickson, Olive Lewellyn and Norman Lewellyn, as lessors, leased certain coal properties in Warrick County to Alcoa Fuels, Inc. ("Alcoa Fuels") as lessee, pursuant to the terms of a written lease (hereinafter called the "Squaw Creek Lease"). Plaintiffs, [Jack O. Hendrickson and James W. Hendrickson], inherited the interests of one of the original lessors (William O. Hendrickson) after mining ceased.

2. Alcoa Fuels subleased the coal properties to Squaw Creek Coal Company ("Squaw Creek"), a joint venture owned by Peabody Coal Company and by Aluminum Company of America, the parent company of Alcoa Fuels. Squaw Creek mined, removed and sold coal from the property from December, 1982 through August, 1987. Neither Peabody nor

1. The Hendricksons' Petition for Oral Argument is hereby denied.

2. On appeal, Hendricksons do not provide an argument with respect to the trial court's Order granting summary judgment in favor of Alcoa on the Hendricksons' fraud claims, therefore, the Hendricksons have waived this argument.

3. The trial court's findings of fact with respect to Alcoa are found in the Record at pp. 1139–1144, and its findings of fact with respect to Peabody are found in the Record at pp. 1151–1155.

Squaw Creek was a party to the Squaw Creek Lease.

3. In addition to mining coal, Squaw Creek calculated the amount of royalties due and owing to the lessors (Plaintiffs' predecessors) under the Squaw Creek Lease. Squaw Creek sent this information to Alcoa Fuels. Pursuant to the terms of the Squaw Creek Lease, Alcoa Fuels made the royalty payments to the lessors. Neither Squaw Creek nor Peabody made any royalty payments to Plaintiffs or their predecessors, nor had any contractual relationship with them.

4. The Lease required Alcoa Fuels to submit each month to the lessors "a statement of all coal mined, removed, and sold from Subject Lands during the preceding calendar month, and to accompany such statement with the payment for any Earned Royalties due hereunder." (Lease, p. 4.) Pursuant to this provision, Alcoa Fuels sent the lessors a statement indicating the royalty being paid in the accompanying check.

5. Plaintiffs were not parties to the Squaw Creek Lease. One of the original lessors, William O. Hendrickson, died in 1984. He bequeathed any interest in the Squaw Creek Lease to his two sons (Jack O. Hendrickson and James W. Hendrickson), who were the original Plaintiffs in this lawsuit. When James W. Hendrickson died, his interest was assumed by his widow Marjorie Hendrickson. Jack O. Hendrickson and Marjorie Hendrickson are the only Plaintiffs in this lawsuit.

6. Plaintiffs never received or even saw the monthly statements that were sent to the lessors. Plaintiffs never received any royalties from Alcoa Fuels. After William O. Hendrickson's death in 1984, royalties were paid to his estate, not to Plaintiffs.

7. Plaintiffs filed this action against Peabody on November 17, 1995 – more than eight years after the final royalty payment by Alcoa Fuels.

**B. The Federal Coal Taxes**

8. Alcoa Fuels agreed to pay royalties calculated as a percentage of the "average invoice sales price of coal" mined and sold from the leased premises. (Lease, p. 2.) There is no definition of "sales price" in the Squaw Creek Lease.

9. More than ten years after the execution of the Squaw Creek Lease, two federal coal taxes were enacted: a reclamation or SMCRA tax in 1977, and a "Black Lung" benefits exercise tax in 1978. 30 U.S.C. § 1232; 26 U.S.C. § 4121. After the taxes were enacted, Squaw Creek collected the amounts charged for these taxes from its customers and passed the amounts collected on to the federal government.

10. When calculating royalties, Squaw Creek did not include these taxes as part of the "average invoice sales price of coal." The taxes were not treated as part of Squaw Creek's (or Peabody's) income or as part of the "sales price" of coal. When Squaw Creek billed its customers, its invoices specified an amount for the "coal" and an additional and separate amount for the taxes.

**C. Plaintiffs' Audit Rights**

11. The Squaw Creek Lease contains specific audit and inquiry rights to ensure the accuracy of the royalty payments:

> The Lessee agrees that *the Lessors shall have the right to check all books and records of the Lessee bearing upon the accuracy of the monthly statements* to be rendered by the Lessee to the Lessors, pursuant to the provisions of Section 4, Article II hereof.
>
> *The Lessors shall further have the right, either themselves or through their agents or attorneys, to inspect all operations of the Lessee* insofar as they reflect upon the accuracy of such statements. The Lessors, their agents and attorneys, shall have the right of ingress and egress for such purpose.

(Lease, p. 9 (emphasis added [by trial court]))

12. Neither Plaintiffs nor their predecessors ever invoked this audit clause. Nor did they ever ask Alcoa Fuels or Peabody any questions about any aspect of how royalties were calculated under the Lease. By the very terms of the Squaw Creek Lease, Plaintiffs could have exercised such audit rights at any time.

13. If Plaintiffs had ever made an inquiry, they would have learned that taxes were not included in the "sales price."

### D. *Plaintiffs' Lease with Other Coal Companies*

14. The same Hendrickson family members who signed the 1966 Lease with Alcoa Fuels entered into a similar coal mining lease with Ideal Basic Industries, Inc. ("Ideal") on November 7, 1977. Under that lease, Plaintiffs' predecessors were also entitled to a royalty of ten percent of the "invoice sales price" for coal mined or removed from the premises. (Ideal Lease, p. 3) The Hendricksons defined the term "price" in this lease to *exclude* "any sales, severance, land or other taxes not based on income." (Ideal Lease, p. 3)

15. In 1994, the same Hendrickson family members (now including the Plaintiffs in this lawsuit) entered into another coal mining lease with Vigo Coal Company ("Vigo"). Under that Lease, Vigo agreed to pay royalties based on a percentage of the "gross realization of the sales price per ton ... of all coal mined and recovered." (Vigo Lease, p. 4)

16. In the Vigo lease, Plaintiffs specifically excluded SMCRA and Black Lung taxes:

> the gross realization of the sales price as used in this Lease shall mean the amount equal to the total proceeds (the total amount received from the sale of Coal ... ) ... less any use, sales, excise, severance, ad valorem or other such taxes not based on net

income, and any other regulation including, but not limited to, fees imposed by the Surface Mining Control Reclamation act [SMCRA], as amended from time to time, and the tax imposed by the Federal Mine Safety and Health Act [Black Lung tax].

### E. *Plaintiffs' Identical Federal Lawsuit*

17. On April 16, 1966 (2½ months before they signed the Squaw Creek Lease), the same lessors signed an essentially identical lease of other coal properties in Warrick County (at the Lynnville Mine). The lessee of this "Lynnville Lease" was Peabody Coal Company. Royalties were to be calculated by Peabody in the same manner that Alcoa Fuels calculated them under the Squaw Creek Lease, *i.e.*, based on a percentage of the "average invoice sales price" of the coal.

18. The Lynnville Lease had provisions regarding what information the lessee was required to provide, and what information the lessors could inquire about or audit, that are identical to the corresponding provisions in the Squaw Creek Lease that is at issue in this lawsuit.

19. On the same day that they filed this case, Plaintiffs filed an identical lawsuit against the three Peabody Companies in the United States District Court for the western District of Kentucky. Plaintiffs claimed that Peabody had breached the Lynnville Lease in the same manner as it (or Alcoa Fuels) breached the Squaw Creek Lease, *i.e.*, by not including taxes in the "sales price." Plaintiffs also asserted fraud allegations identical to those in this lawsuit.

20. On October 7, 1997, the District Court granted summary judgment in favor of Peabody on all of Plaintiffs' claims. *Hendrickson v. Peabody Coal Co.*, 37 F.Supp.2d 947 (W.D.Ky.1997). The United States Court of Appeals for the Sixth Circuit *affirmed* the District

Court's decision. 172 F.3d 48 (6th Cir. 1998) ("*Hendrickson I*"). The Squaw Creek Lease and the Lynnville Lease both state that Indiana law is to apply, and the District Court applied Indiana law in its decision.

(R. 1151–1155).

Although the trial court's findings of fact with respect to Alcoa's Motion for Summary Judgment are very similar to those for Peabody, there are a few minor differences. Therefore, we have set forth below the numbered paragraphs from the trial court's findings of fact with respect to Alcoa's Motion for Summary Judgment that differ from the Peabody Summary Judgment findings of fact:

A. *The Mineral Lease* [Squaw Creek Lease]

\* \* \* \* \*

4. Aluminum Company of America and Squaw Creek are not parties to this lawsuit.

5. Aluminum Company of America and Alcoa Fuels are separate and distinct corporate entities.

6. By the terms of the joint venture agreement, Peabody determined the amount of royalties due to the Lessors under the Mineral Lease.

7. Alcoa Fuels did not participate in any way or assist Peabody in calculating what royalties were due to the Lessors under the Mineral Lease.

8. Peabody provided Alcoa Fuels with Royalty and Production Reports which specified the amounts of royalties due to the Lessors under the Mineral Lease. These reports contained no indication of how Peabody calculated the amount owed to the Lessors and did not reflect whether taxes were considered as part of the average invoice sales price of the coal.

9. Alcoa Fuels sent the Lessors monthly statements and royalty checks based on Peabody's Royalty and Production Reports.

\* \* \* \* \*

B. *Plaintiffs' Audit Rights*

\* \* \* \* \*

13. Alcoa Fuels and Peabody did not prevent the Lessors or Plaintiffs from exercising their audit rights or asking questions about the royalty calculations.

\* \* \* \* \*

C. *The Federal Coal Taxes*

\* \* \* \* \*

16. When calculating royalties, Peabody did not consider taxes to be part of realization or the "Average invoice sales price of coal." When Peabody billed customers for the coal, the invoices specified an amount for the "coal" and a separate amount for the taxes. The taxes were not treated as part of Peabody's income or as part of the "sales price" of coal. Rather, the taxes were placed into liability account until they were paid to the federal government.

\* \* \* \* \*

E. *The Royalty Payments*

22. Squaw Creek ceased coal removal and making royalty payments on coal sold from the Leased Premises in August of 1987.

23. When Squaw Creek resumed coal removal and paying royalties from May through October of 1995, in light of litigation over the issue, Peabody included the relevant taxes in their calculation of the royalties and paid royalties on the taxes with a full reservation of rights.

24. Plaintiffs do not allege that any money is owed on the royalty payments made in 1995 but seek to recover royalties on taxes from 1982–1987.

25. The latest in time royalty payment at issue in the current dispute occurred in August 1987.

26. Plaintiffs filed this action on November 17, 1995, more than eight years after the final royalty payment at issue in the current dispute.

(R. 1140–1144).

In their complaint, the Hendricksons claimed that Peabody and Alcoa breached

the 1966 Lease Agreement when they deducted the amounts equal to the Federal Reclamation Fee and the Black Lung Tax from the sales price of the coal in the calculation and payment of royalties to the Hendricksons. Additionally, the Hendricksons asserted that Peabody and Alcoa committed actual and constructive fraud.

Peabody and Alcoa moved for summary judgment arguing that (1) the Hendricksons are time-barred as a matter of law from asserting their breach of contract claim (Count I); (2) the Hendricksons cannot recover under a theory of constructive fraud because no fiduciary relationship existed between the parties (Count II); and (3) the Hendricksons cannot recover under a theory of actual fraud because the Hendricksons did not rely or had no right to rely on Peabody's and Alcoa's alleged misrepresentations (Count III). On August 26, 1999, the trial court granted summary judgment in favor of Peabody and Alcoa on all three counts. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

■ In reviewing the trial court's grant of summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind.Ct.App.1997). We do not weigh evidence, but will liberally construe the facts in the light most favorable to the nonmoving party. *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 132 (Ind.Ct.App.1997), *trans. denied.* Summary judgment should be granted only when the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the trial court correctly applied the law. *City of Elkhart v. Agenda: Open Government, Inc.*, 683 N.E.2d 622, 625 (Ind.Ct.App.1997), *reh'g*

*denied, trans. denied.* The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind.1993).

■ If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party and reverse the entry of summary judgment. *McGee v. Bonaventura*, 605 N.E.2d 792, 793 (Ind.Ct.App.1993). A fact is material for summary judgment purposes if its resolution is decisive of either the action or a relevant secondary issue. *Northern Indiana Public Service Co. v. East Chicago Sanitary Dist.*, 590 N.E.2d 1067, 1072 (Ind.Ct.App.1992). A factual issue is genuine if those matters properly considered under T.R. 56 evidence a factual dispute requiring the trier of fact to resolve the opposing parties' different versions. *Id.*

### Collateral Estoppel

■ Issue preclusion (sometimes referred to as collateral estoppel) bars the subsequent litigation of a fact or issue which was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 968 (Ind.1998), *reh'g denied.* In that situation, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Sullivan v. American Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 137 (Ind.1992). However, the former adjudication will only be conclusive as to those issues which were actually litigated and determined therein. *Wedel v. American Elec. Power Service Corp.*, 681 N.E.2d 1122, 1131 (Ind.Ct.App.1997), *reh'g denied, trans. denied.* Issue preclusion does not extend to matters which were not expressly adjudicated and can be inferred only by argument. *Peterson v. Culver Educational Foundation*, 402 N.E.2d 448,

## 812

461 (Ind.Ct.App.1980). The primary consideration in the use of issue preclusion is whether the party against whom the former adjudication is asserted had "a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances" to permit the use of issue preclusion in the subsequent action. *Sullivan*, 605 N.E.2d at 138. Review of a trial court's decision regarding the use of issue preclusion is subject to an abuse of discretion standard. *Shell Oil*, 705 N.E.2d at 969.

 Where a defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff has previously litigated and lost against another defendant, the use has been termed "defensive" collateral estoppel. *Tofany v. NBS Imaging Systems, Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993). Traditionally, Indiana has required identity of parties and mutuality of estoppel before the doctrine of collateral estoppel could be invoked. *Id.* Accordingly, "a stranger to the judgment, one who is neither a party nor in privity with a party to the prior judgment, has not been permitted to take advantage of collateral estoppel in the subsequent action." *Id.* However, our supreme court has rejected those rigid requirements as prerequisites to the defensive use of collateral estoppel. *Sullivan*, 605 N.E.2d at 137. Instead, in determining whether the defensive use of collateral estoppel is appropriate, the court must consider whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of

collateral estoppel. *Tofany*, 616 N.E.2d at 1037.

## I. *Breach of Contract Claim*

 The Hendricksons argue that the trial court erred in determining that a six year statute of limitations applied to their breach of contract claim rather than a twenty year statute of limitations. Specifically, the Hendricksons claim that this is a breach of contract claim based upon Peabody and Alcoa's failure to pay the full amount of royalties due on coal actually mined and sold for the leased premises. Further, the Hendricksons argue that the 1966 Lease Agreement at issue is clearly a "contract[ ] in writing other than those for the payment of money entered into before September 1, 1982, [and] must be commenced within twenty (20) years after the cause of action accrues." Ind.Code § 34–11–2–11 [4] (formerly Ind.Code § 34–1–2–2(6)). Therefore, the Hendricksons assert that the applicable statute of limitations for their breach of contract claim is twenty years. However, Peabody and Alcoa claim that the Hendricksons are collaterally estopped and time-barred from asserting their breach of contract claim because the United States District Court, Western District of Kentucky determined that the appropriate statute of limitations for the Hendricksons' claim is six years under Ind.Code § 34–1–2–1.[5] Further, because the Hendricksons filed suit more than nine years after the final payment of royalties under the 1966 Lease Agreement, they are time-barred from asserting a breach of contract claim. We agree.

With respect to Peabody, the trial court concluded that:

---

4. Ind.Code § 34–11–2–11 (formerly Ind.Code § 34–1–2–2) provides in pertinent part as follows:

> [A]n action upon contracts in writing other than those for the payment of money entered into before September 1, 1982, not including chattel mortgages, deeds of trust, judgments of courts of record, or for the recovery of the possession of real estate, the action must be commenced within twenty (20) years after the cause of action accrues.

5. Ind.Code § 34–11–2–7 (formerly Ind.Code § 34–1–2–1) provides as follows:

> The following actions must be commenced within six (6) years after the cause of action accrues:
> * * * * *
> (2) Actions for use, rents, and profits of real property.

21. There is no genuine issue of material fact that would preclude summary judgment in Peabody's favor on Plaintiff's [Hendrickson's] breach of contract claim (Count I), and Peabody is entitled to judgment as a matter of law.

\* \* \* \* \*

28. This Court further finds that Plaintiffs are barred by the doctrine of collateral estoppel from re-litigating the timeliness of their claim in this forum. Plaintiffs filed an identical action in the United States District Court for the Western District of Kentucky, alleging the same breach of contract claim against Peabody. In *Hendrickson I*, the District Court, applying Indiana law, held that Plaintiffs' claim was time-barred under Indiana's six-year statute of limitations for "use, rents, and profits of real property," and the Sixth Circuit affirmed this ruling. Collateral estoppel therefore precludes Plaintiffs from re-litigating this timeliness issue.

(R. 1156–1157).

With respect to Alcoa, the trial court concluded:

31. There is no genuine issue of material fact that would preclude summary judgment in Alcoa Fuels' favor on Plaintiffs' Claim on the Mineral Lease (Count I), and Alcoa Fuels is entitled to judgment as a matter of law.

32. First, this Court finds that Plaintiffs are barred by the doctrine of collateral estoppel from re-litigating the timeliness of their claim in this forum. In *Hendrickson I* Plaintiffs alleged the same breach of contract claim against Peabody. *Hendrickson I* held that Plaintiffs' claim was time-barred under Indiana's six-year statute of limitations for "use, rents, and profits of real property." Collateral estoppel therefore

precludes Plaintiffs from re-litigating this timeliness issue.

33. The facts which Plaintiffs contend distinguish this case from *Hendrickson I* are wholly immaterial to the issues before the Court and do not preclude the application of collateral estoppel.

(R. 1145).

In *Hendrickson I*, the court concluded that Hendricksons' cause of action was for the underpayment of royalties, and therefore, the six-year statute of limitations for actions for "use, rents, and profits of real property" applied. *Hendrickson I*, 37 F.Supp.2d at 951–952 (citing Ind.Code § 34–1–2–1 recodified at Ind.Code § 34–11–2–7). Specifically, the court found that pursuant to the 1966 Lease Agreement, Hendricksons leased to Peabody certain lands described in the agreement, and in consideration for the leased property, Peabody agreed to pay Hendricksons "certain royalties or rentals." [6] The court reasoned that although "rent" and "royalty" are often used interchangeably to convey the same meaning, "royalty" is the more appropriate term when rental is based on the quantity of coal that is or may be taken from a mine. *Id.* at 952. Therefore, the court concluded, agreeing with the district court's conclusion in *Hemenway v. Peabody Coal Company*, Civil Action No.:EV:92–141–C (S.D.Ind.1993), that this particular breach of contract claim for the underpayment of royalties "clearly sought recovery of royalties due under the lease agreement and was governed by the six-year statute of limitations found in I.C. § 34–1–2–1 for recovery of use, rents, and profits of real property." *Hendrickson I*, 37 F.Supp.2d at 952.

Nevertheless, the *Hendrickson I* court found that the twenty-year statute of limi-

---

6. In that case, the court quoted a portion of the Lease Agreement, which stated as follows: " 'In consideration of all of the rights herein granted to Lessee, the Lessee agrees to pay the Lessors certain royalties or rentals,....' 1966 Lease Agreement, Article II." *Hendrickson I*, 37 F.Supp.2d at 952 n. 4. Similarly, in our case, the 1966 Lease Agreement between the Hendricksons and Alcoa provided that "In consideration of all the rights herein granted to the Lessee, the Lessee agrees to pay the Lessors certain royalties or rentals,...." (R. 14).

tations under Ind.Code § 34–1–2–2(6) could also apply to the Hendricksons' breach of contract claim. Specifically, the court reasoned that Hendricksons' assertion that Peabody's underpayment of royalties was a breach of the terms of the written Lease Agreement, could constitute a breach of contract claim governed by Ind.Code § 34–1–2–2(6), and therefore, the twenty-year statute of limitations would apply. *Id.* However, the court concluded that although the Lease Agreement provided the basis of the Hendricksons' claims, the specific nature of the requested relief was for rent, and therefore, the specific statute concerning actions for "use, rents, and profits of real property" should prevail over the general limitations provisions for breach of contract claims. *Id.* at 952–953.

In the present case, the trial court made the following similar findings and conclusions with respect to the Hendricksons' breach of contract claim against Peabody:

23. In addition to the lack of contractual privity, Peabody is entitled to summary judgment because Plaintiffs are time-barred under Indiana's six-year statute of limitations applicable to actions for "use, rents, or profits of real property." I.C. § 34–11–2–7 (formerly I.C. § 34–1–2–1).

24. The Lease in this case provides that, in exchange for the right to mine coal upon the leased premises, the lessor (Alcoa Fuels) agreed to pay Plaintiffs' predecessors "certain royalties or rentals." (Lease, p. 2) Thus, this Court characterizes Plaintiffs' Count I as an action for "rents" that falls within the scope of the six-year statute of limitations for "use, rents, or profits of real property" in I.C. § 34–11–2–7.

25. The Court specifically rejects the applicability of Indiana's twenty-year statute of limitations for breach of written contracts, I.C. § 34–11–2–11 (formerly I.C. § 34–12–2–2(6)).[sic] [7] Since it

is a more specific limitations statute, the six-year statute for "use, rents, or profits of real property" in I.C. § 34–11–2–7 governs in this case.

(R. 1156).

The trial court also made the following similar findings and conclusions with respect to the Hendricksons' breach of contract claim against Alcoa:

34. Alcoa Fuels is entitled to summary judgment because Plaintiffs' claim for royalties under the Mineral Lease is time-barred under Indiana's six-year statute of limitations applicable to actions for "use, rents, or profits or [sic] real property." I.C. § 34–11–2–7 (formerly I.C. § 34–1–2–1).

35. The Mineral Lease in this case provides that, in exchange for the right to mine coal upon the leased premises, the lessor agreed to pay to Plaintiffs' predecessors "certain royalties or rentals." Thus, this Court characterizes Plaintiffs' Count I as an action for "rents" that falls within the scope of the six-year statute of limitations for "use, rents, or profits of real property" in I.C. § 34–11–2–7 (formerly I.C. § 34–1–2–1).

36. The Court specifically rejects the application of Indiana's twenty-year statute of limitations for breach of written contracts. I.C. § 34–11–2–11 (formerly I.C. § 34–12–2–2(6))[sic]. Since it is a more specific limitations statute, the six-year statute for "use, rents, or profits of real property" in I.C. § 34–11–2–7 (formerly I.C. § 34–1–2–1) governs this case.

(R. 1145–1146).

Next, the Hendricksons argue that even if the six-year statute is applicable, the statute of limitations was tolled due to Peabody and Alcoa's concealment of material facts. However, the court in *Hendrickson I* analyzed that very same issue and concluded that "the record is void of any evidence of such concealment, espe-

---

7. The trial court mistakenly cited the former code section for Ind.Code § 34–11–2–11 as Ind.Code § 34–12–2–2(6) instead of Ind.Code § 34–1–2–2(6).

cially where Section VI of the Lease Agreement[8] gave Plaintiffs' inspection and audit rights." *Hendrickson I,* 37 F.Supp.2d at 953.

In the present case, with respect to the Hendricksons' fraudulent concealment claim against Peabody and Alcoa, the trial court concluded as follows:

> 26. [37.] The Court also rejects Plaintiffs' argument that the six-year limitations period was tolled due to fraudulent concealment by Peabody [Alcoa]. In order to toll the statute of limitations, there must be active concealment – not mere silence – and there is no evidence whatsoever that Peabody [Alcoa] actively concealed any information from Plaintiffs or their predecessors.

(R. 1156–1157, 1146).

Finally, with respect to the Hendricksons' breach of contract claim, they assert that the discovery rule tolled the statute of limitations. Specifically, they argue that because under the discovery rule, a claim accrues and a statute of limitations begins to run when they knew, or in the exercise of ordinary diligence, could have discovered the alleged miscalculation of royalties under the Lease Agreement, and because they did not learn of Peabody's and Alcoa's practice of deducting the taxes and other costs from the average invoice price in calculating their royalties until after January 1, 1990, the statute of limitations should have been tolled until this date. However, the court in *Hendrickson I* analyzed this very issue and concluded that:

> The Plaintiffs [sic] assertion is insufficient to raise a factual dispute regarding when the Hendricksons, in the exercise of due diligence, could have discovered the miscalculations. No evidence exist [sic] that William O. Hendrickson, their predecessor and original Lessor, was uninformed about the treatment of taxes under the lease. Pursuant to the 1966 Lease Agreement Section VI, Plaintiffs had an audit right which allowed them

to inspect all books and records of Peabody bearing upon the accuracy of monthly statements. No evidence exists whether Plaintiffs predecessors exercised their audit and inspection rights. In fact, in 1977 Plaintiffs [sic] predecessors entered into a similar lease agreement with Ideal Basis Industries and specifically excluded the taxes from the sales price of coal. As early as 1977, the Hendricksons knew that the taxes were in existence and understood that they could affect royalty payments.

*Hendrickson I,* 37 F.Supp.2d at 954.

Similarly, in our case, the trial court made the following conclusions:

> 27. [38] The Court rejects Plaintiffs' argument that the "discovery rule" precludes the entry of summary judgment in this case. Plaintiffs and their predecessors had audit rights allowing them to inspect all books and records of Alcoa Fuels bearing on the accuracy of their monthly statements. Furthermore, Plaintiffs' predecessors entered into another lease with Ideal in 1977 and specifically excluded the taxes at issue from the sales price of the coal. Thus, Plaintiffs and their predecessors knew of the affect of the coal taxes on royalties as early as 1977 and nevertheless failed to file a timely claim.

(R. 1157, 1146).

Therefore, for the foregoing reasons of the court in *Hendrickson I,* and the trial court in our case, we find that defensive collateral estoppel applies to this case, and the Hendricksons are collaterally estopped from asserting a breach of contract claim against Peabody and Alcoa. Specifically, both the *Hendrickson I* court and the trial court in our case concluded that the Hendricksons' breach of contract claim was time-barred pursuant to Ind.Code § 34–11–2–7 (formerly Ind.Code § 34–1–2–1), and the statute of limitations was not tolled due to fraudulent concealment or the

---

8. In the present case, the Record reveals that Article VI of the Lease Agreement gave the Hendricksons inspection and audit rights. (R. 21).

discovery rule. Because the facts and issues with respect to the Hendricksons' breach of contract claim were adjudicated in *Hendrickson I*, and even though Alcoa was not a party to *Hendrickson I*, the Hendricksons had a full and fair opportunity to litigate the issues and we do not find it to be unfair under the circumstances to permit the use of defensive collateral estoppel for both Peabody and Alcoa.

## II. *Fraud Claims*

■ The Hendricksons argue that the trial court erred in granting Peabody's summary judgment motion on their fraud claim. Specifically, the Hendricksons claim that Peabody committed both constructive and actual fraud.

First, the Hendricksons allege that Peabody concealed or failed to disclose how it was calculating royalties, Peabody was in a superior position of knowledge, and owed them a fiduciary duty. Specifically, the Hendricksons claim that Peabody committed constructive fraud because it had a duty to disclose the fact that Peabody was deducting the taxes and other costs from the average invoice sales price in calculating the paying royalties. Next, the Hendricksons claim that Peabody committed actual fraud because they relied upon Peabody's alleged misrepresentations.

However, with respect to the Hendricksons' fraud claims, the trial court concluded as follows:

> 35. Additionally, the United States District Court in *Hendrickson I* ruled that there was no constructive fraud liability, and Plaintiffs are precluded by the doctrine of collateral estoppel from re-litigating their constructive fraud claim in this forum.
>
> * * * * *
>
> 37. In *Hendrickson I*, the United States District Court ruled that Plaintiffs neither relied nor had the right to rely on any alleged representation made by Peabody. Thus, as a matter of collateral estoppel, Plaintiffs are precluded

from re-litigating the issue of reliance in this forum.

(R. 1158–1159).

In *Hendrickson I*, the court found that the Lease Agreement did not create a fiduciary relationship between the Hendricksons and Peabody for Peabody to act primarily for the Hendricksons' benefit in matters connected with the Lease Agreement. *Hendrickson I*, 37 F.Supp.2d at 954–955. Further, the court found the Lease Agreement to be an arm's length contractual agreement, which precluded a confidential relationship between the parties. *Id.* Instead, the Lease Agreement imposed duties, rights, and obligations of both parties, including Peabody's duty to calculate the royalty payments pursuant to the specific terms of the Lease Agreement. *Id.* However, the court concluded that the Lease Agreement did not impose an obligation for Peabody to disclose the exact method of calculation. *Id.*

In addition, the court rejected the Hendricksons' argument that Peabody's position of superior knowledge obligated it to disclose material facts regardless of the existence of fiduciary relationship between the parties by concluding that there is no liability for failure to disclose material facts unless there is a duty to so disclose. *Id.*

Similarly, with respect to the Hendricksons' constructive fraud claim against Peabody, the trial court in our case concluded that:

> 31. First, there was no fiduciary or other relationship between Plaintiffs and Peabody or Alcoa Fuels that would support a constructive fraud claim. The Lease between Plaintiffs' predecessors and Alcoa Fuels did not require disclosure of the "average invoice sales price" or the method of calculating royalties or the treatment of taxes.
>
> 32. The Lease between Alcoa Fuels and Plaintiffs' predecessors was an arms-length contractual agreement.

33. Moreover, the Lease expressly gave Plaintiffs and their predecessors the right at any time to ask about these matters and to inspect records to verify any response given by Alcoa Fuels. Plaintiffs never exercised this contractual right.

34. Based on these undisputed facts, there was no fiduciary relationship or other relationship upon which to base a claim of constructive fraud as a matter of law.

(R. 1158). Therefore, both the *Hendrickson I* court and the trial court in our case concluded that because no duty existed running from Peabody to the Hendricksons, the Hendricksons could not recover under constructive fraud.

Next, with respect to the Hendricksons' actual fraud claim, the court in *Hendrickson I,* found that the Hendricksons had no right to rely upon the alleged misrepresentations in light of the Lease Agreement granting the Hendricksons the inspection and audit rights. *Hendrickson I,* 37 F.Supp.2d at 957. The court reasoned that under Article VI of the 1966 Lease Agreement, the Hendricksons possessed an audit clause which granted the Hendricksons an unlimited right to inspect all books and records of Peabody bearing upon the accuracy of the monthly statements. *Id.* at 958. Specifically, the court concluded that:

> Plaintiffs have not claimed, let alone presented any evidence, that Peabody interfered with the right of inspection. Plaintiffs fail to present any evidence that the failure to disclose the opinion of Peabody's management concerning whether taxes, not in existence at the time of the lease, should be included in the "average invoice sales price" of coal influenced Plaintiffs decisions concerning whether to call for an inspection of Peabody's records. Finally, it is this Courts opinion that any such reliance by Plaintiffs on Peabody's "fraudulent" check stubs is seriously belied by the fact that Plaintiffs had access to the records that supply such representations.

*Id.* (citation omitted).

Similarly, with respect to the Hendricksons' actual fraud claim against Peabody, the trial court in our case concluded that:

> 36. With respect to Plaintiffs' claim of actual fraud, this Court finds that Plaintiffs took no actions in reliance on any alleged statements made by Alcoa Fuels or Peabody. Furthermore, in light of the fact that Plaintiffs and their predecessors had the right – which they never exercised – to determine how royalties were calculated under the Lease, Plaintiffs did not have the right to rely upon any such representations. Plaintiffs' and their predecessors' failure to make an inquiry of Alcoa Fuels and their execution of other lease with other coal companies manifests their failure to exercise ordinary care in guarding against fraud and therefore precludes reliance.
>
> * * * * *
>
> 38. In addition to the lack of any reliance, Plaintiffs cannot establish that Peabody made any misrepresentation to Plaintiffs or their predecessors because Peabody never sent any payments or statements to Plaintiffs or their predecessors. For all of the above reasons, Peabody is entitled to summary judgment on Plaintiffs' fraud claims.

(R. 1158–1159).

We find that the trial court properly granted summary judgment in Peabody's favor by concluding that the Hendricksons are collaterally estopped from asserting their fraud claims against Peabody because the Hendricksons' claims with respect to constructive and actual fraud against Peabody have previously been adjudicated by the court in *Hendrickson I.*

### III. *Denial of Motion to Amend Complaint*

The Hendricksons argue that the trial court erred by denying their Motion for Leave to File Third Amended Complaint.

The Hendricksons filed their Complaint and Demand for Trial by Jury on November 17, 1995. On March 11, 1996, the Hendricksons filed their First Amended Complaint and Demand for Trial by Jury. On July 15, 1996, the Hendricksons filed their Second Amended Complaint and Demand for Trial by Jury. On June 30, 1999, the Hendricksons filed their Third Amended Complaint and Demand for Trial by Jury, and the trial court denied the Hendricksons' motion on August 5, 1999.

 "Amendments to the pleadings are to be liberally allowed in order that all issues involved in a lawsuit are presented to the jury." *Fleming v. International Pizza Supply Corp.*, 707 N.E.2d 1033, 1036 (Ind.Ct.App.1999), *trans. denied.* However, "[t]he trial court has broad discretion in granting or denying amendments to the pleadings and we will reverse only upon a showing of abuse of discretion." *Id.; See also Freedom Exp., Inc. v. Merchandise Warehouse Co., Inc.*, 647 N.E.2d 648 (Ind. Ct.App.1995). "An abuse of discretion is an erroneous conclusion and judgment, clearly against the logic and effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom." *Id.* at 653.

 Trial Rule 15(A) provides that a complaint may be amended by leave of the trial court and that the trial court should grant such leave "when justice so requires." T.R. 15(A). In *Palacios v. Kline*, 566 N.E.2d 573 (Ind.Ct.App.1991), this court articulated several factors to which a trial court should look in determining whether justice requires the leave to be granted. Those factors include undue delay, bad faith, or dilatory motive on the part of the movant and undue prejudice to the opposing party. *Id.* at 575.

 The Hendricksons moved to amend their complaint for a third time almost four years after filing their original complaint and three months after Peabody and Alcoa filed summary judgment motions with respect to the Hendricksons'

Second Amended Complaint. It was reasonable to assume that such delay was undue. Given the deference we must give to the trial court's decision, we cannot say that there was an abuse of discretion.

### CONCLUSION

Based on the foregoing, the trial court properly granted Peabody and Alcoa's motions for summary judgment on the Hendricksons' breach of contract and fraud claims by concluding that collateral estoppel precludes the Hendricksons from relitigating the timeliness of their breach of contract claim against Peabody and Alcoa and precludes the Hendricksons from relitigating their fraud claims against Peabody. Further, the trial court properly denied the Hendricksons' motion for leave to file a third amended complaint.

Affirmed.

KIRSCH, J., and BAKER, J., concur.