**Sandra K. KELLEY, Ph.D.,**
**Appellant–Plaintiff,**

v.

**VIGO COUNTY SCHOOL CORPORATION; Daniel T. Tanoos, as Superintendent of Said School Corporation and, Individually; John V. Orr, Director of Personnel of said School Corporation, and Individually; C. Mytron Lisby, Director of Secondary Education of said School Corporation, and Individually, Appellees–Defendants.**

No. 84A01–0308–CV–293.

Court of Appeals of Indiana.

April 22, 2004.

John R. Price, Bruce A. Stuard, John R. Price & Associates, Indianapolis, IN, Attorneys for Appellant.

Robert B. Clemens, George T. Patton, Jr., Bryan H. Babb, Bose McKinney & Evans LLP, Indianapolis, IN, Frederick T. Bauer, Bauer & Duffy, Terre Haute, IN, Attorneys for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Sandra K. Kelley appeals the trial court's denial of her motion for leave to file a third amended complaint in her action against the Vigo County School Corporation and three of its employees (Daniel T. Tanoos, John V. Orr, and C. Mytron Lisby) in their official and individual capacities. The defendants (collectively, "the School") cross-appeal the trial court's denial of their motion for attorney fees and also seek appellate attorney fees.

We affirm the trial court but remand for entry of an award of appellate attorney's fees.

### ISSUES

1. Did the trial court abuse its discretion when it denied Kelley's motion for leave to file a third amended complaint?
2. Did the trial court err when it denied the School's motion for attorney fees that were incurred when Kelley continued to litigate her claim after completion of post-remand discovery?
3. Is the School entitled to an award of its appellate attorney fees?

### FACTS[1]

Kelley served as principal of a middle school in the Vigo County School Corpora-

---

1. The Statement of Facts in an appellate brief "shall describe the facts relevant to the issues presented for review." Ind. Appellate Rule 46(A)(6). In other words, it should explain "facts" about the case. Kelley's Statement of Facts begins by telling us that she "filed a complaint" against the defendants "sounding in contract and in tort." Kelley's App. at 2. This concludes her reference to "facts," as the remainder of the section details the purely procedural actions on this "complaint." We are unable to divine the necessary facts from

tion beginning in 1992. In March of 1999, Tanoos[2] met with Kelley to discuss complaints that had been received about her. In August of 1999, Lisby[3] evaluated Kelley's performance and found it unsatisfactory in a number of areas. Kelley began to forcefully question middle school staff about whether negative statements about her were being circulated. Receiving complaints about Kelley's actions in this regard, Orr,[4] Lisby, and others were charged with investigating on behalf of the School Corporation. A series of complaints about Kelley's professional conduct were reviewed. The investigation report recommended that Kelley be reassigned. Tanoos followed the recommendation and reassigned Kelley to a position where she received salary at the same level and for the same term as provided in her contract.

On September 28, 1999, Kelley filed a "Complaint for Injunctive Relief and Damages" against Vigo County School Corporation ("the School Corporation") and Tanoos, Orr, and Lisby ("the School Officials") in their official and individual capacities. The complaint began with a 27 paragraph "factual background," followed by Count I for breach of contract; Count II for injunctive relief; Count III for defamation of character; and Count IV for malicious interference with a contractual relationship. (School's App. 35). On October 4, 1999, the School filed an answer that generally denied Kelley's allegations, argued that there was no basis

for injunctive relief, and asserted that Kelley had failed to comply with the notice requirements of the Indiana Tort Claims Act. On October 4, 1999, the School also moved for judgment on the pleadings.

On October 8, 1999, Kelley moved for leave to file her first amended complaint. Before the trial court ruled thereon, Kelley filed a motion on October 15, 1999, for leave to file her second amended complaint. The trial court granted the motions to amend on October 22, 1999. The School again filed an answer with denials and affirmative defenses.

On January 18, 2000, the trial court entered partial judgment on the pleadings. The trial court granted judgment on the pleadings to the School as to the claims for injunctive relief, defamation of character, and tortious interference with a contractual relationship. Subsequently, both parties moved for summary judgment on the remaining breach of contract claim against the School Corporation. On July 28, 2000, the trial court granted summary judgment in favor of the School Corporation on the remaining claim for breach of contract.

On August 3, 2000, Kelley filed her praecipe and pursued an appeal. On July 30, 2001, this court issued its memorandum opinion. *Kelley v. Vigo County Sch. Corp.*, No. 84A01–0011–CV–372, 752 N.E.2d 669 (July 30, 2001).[5] *Inter alia*, Kelley argued on appeal that the trial court erred in

Kelley's submission. Thus, we were left to resort to our earlier memorandum opinion of 2001 addressing Kelley's first appeal and to the School's brief in order to portray the facts that follow—facts necessary to understand the appeal before us.

2. Tanoos was Superintendent of the School Corporation.

3. Lisby was the Director of Secondary Education.

4. Orr was Personnel Director for the School Corporation.

5. Therein, we affirmed the trial court's grant of (1) judgment on the pleadings in favor of Orr as to the tortious interference with a contract count, and (2) summary judgment in favor of the School Corporation on her breach of contract claim.

granting judgment on the pleadings in favor of Tanoos, Orr, and Lisby as to the defamation count. We held that the School Officials' alleged defamatory statements about Kelley's professional competence (statements which Kelley alleged were made within the scope of their employment) fell squarely within the scope of their employment, thereby invoking the Tort Claims notice requirements,[6] and were protected by the qualified privilege of common interest. However, as to Kelley's allegation that false statements made "by persons not yet completely and fully known" to her had been made to the effect that she had engaged in an extramarital affair, we found that in "the context and procedural posture of a motion for judgment on the pleadings, we [were] constrained to assume that these unnamed persons could include Tanoos, Orr, or Lisby." Op. at 9, n. 3. However, because "allegations of an extramarital affair [were] outside the scope of employment" of the School Officials, *id.* at 10, we reversed the grant of judgment on the pleadings as to the defamation count and remanded for further proceedings.[7] In a rehearing order, we clarified that the remand was for further proceedings "limited to the allegation that unknown persons made false statements about Kelley's involvement in an extramarital affair." *Kelley* on reh'g. (Oct. 17, 2001) at 2.

While Kelley's petition for transfer of our memorandum decision was pending, on November 1, 2001, Kelley filed a motion with the trial court seeking leave to file a third amended verified complaint. This proposed third amended complaint repeated the defamation allegation that false statements about Kelley being "involved in an extramarital affair" had been "made to others, by persons not yet completely and fully known to" Kelley. Appellees' Br. at 50. But the proposed third amended complaint would have *added* allegations that the School Officials had (1) falsely accused her of theft; (2) alleged her falsification of grants and grant information; (3) accused her of bribery; (4) released to the media and the public her personnel file containing known falsehoods; (5) encouraged the possible filing of an unfair labor practice complaint by the union; and (6) damaged her professional reputation; and (7) that Tanoos had stated other falsehoods. On the School's motion, the trial court stayed any ruling on Kelley's motion to again amend her complaint (the proposed third amended complaint) until appellate action was final. On April 26, 2002, our supreme court denied Kelley's petition for transfer. Shortly thereafter, on May 9, 2002 according to the CCS, the trial court denied Kelley's motion to file a third amended complaint.

The parties engaged in extensive discovery as to the defamation allegation about an extramarital affair. On April 14, 2003, the School moved for summary judgment, asserting that Kelley had never identified a person who could testify that one of the School Officials published such an allegation and that she had failed to prove the essential element of a defamatory statement having been published. After oral argument on the matter, on June 30, 2003, the trial court granted the School's motion for summary judgment based on Kelley's "failure to establish a prima facie defama-

---

6. According to our memorandum decision, Kelley had filed no tort claim notice. Slip Op. at 7.

7. After our July 30, 2001 decision, Kelley filed a petition for transfer on August 28, 2001, and on that same date, the School petitioned the Court of Appeals for rehearing. After our rehearing order, the School filed its petition for transfer on November 13, 2001.

tion case against Defendants for lack of Publication." (Appellee's App. 19). Kelley does not appeal this ruling by the trial court.

On July 18, 2003, the School petitioned the trial court for an award of attorney fees incurred after Kelley's "filing and continued pursuit of frivolous, unreasonable, and groundless claims." (Appellees' App. 199). The School asserted Kelley's defamation claim was ungrounded "from the outset," or "at least" from the time she continued it after her answers to interrogatories and her own deposition indicated that she was unable to identify a single witness who could testify that the School Officials had spoken of an extramarital affair involving Kelley. *Id.* at 210. In response, Kelley filed a motion "for sanctions, under Trial Rule 11."[8] *Id.* at 261. On August 4, 2003, the trial court denied both motions.

Kelley now appeals the trial court's denial of her motion to file a third amended complaint. The School cross-appeals the trial court's denial of its motion for an award of attorney's fees. The School also seeks an award of appellate fees.

### DECISION

1. *Denial of Motion for Leave to File Third Amended Complaint*

■ Indiana Trial Rule 15(A) provides that after a responsive pleading has been filed to an initial complaint, the complaining party may then amend that complaint "only by leave of the court or by written consent of the adverse party." However, the Rule further provides that "leave shall be given when justice so requires." *Id.* Whether to permit or deny amendments to the pleadings lies within the broad discretion of the trial court, and we will reverse only upon a showing of abuse of discretion. *Hendrickson v. Alcoa Fuels, Inc.*, 735 N.E.2d 804, 818 (Ind.Ct. App.2000). "An abuse of discretion is an erroneous conclusion and judgment, clearly against the logic and effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom." *Id.*

Kelley argues that because her additional allegations of defamatory conduct were "similar in nature to the surviving claim of defamation on remand, the trial court abused its discretion when it denied [her] motion for leave to amend her complaint." Kelley's Br. at 5. Kelley cites *McCarty v. Hospital Corp. of Am.*, 580 N.E.2d 228 (Ind.1991), as "explain[ing] what 'conduct, transaction or occurrence' means" when the claim in an amended pleading will be found to relate back to the date of the original pleading under Trial Rule 15(C),[9] and she contends that her additional claims meet this explanation of an amendment that will relate back.

*McCarty* declared that when "the factual circumstances that gave rise to the original claims, the general injuries sustained, and the general conduct causing those injuries," the amended complaint would "relate back" under Trial Rule 15(C). 580 N.E.2d at 231. Accordingly, *McCarty* instructed, "it is these factual circumstances that must be examined to determine whether relation back is proper." *Id. McCarty* suggests that "[o]ne guide to conducting" the requi-

---

8. Indiana Trial Rule 11 concerns signings and verification of pleadings. However, Rule 11 of the Federal Rules of Civil Procedure includes a provision for sanctions when an attorney makes an improper representation to the court.

9. Pursuant to Trial Rule 15(C), when a claim in an amended pleading "arose out of the conduct, transaction, or occurrence set forth ... in the original pleading," the claim "relates back to the date of the original pleading."

site factual circumstances inquiry "is to determine whether evidence tending to support the facts alleged in the amended complaint could or would naturally have been introduced under the former pleading to support the original complaints." *Id.*

According to the complaint that Kelley sought to amend,[10] her initial claim was of false defamatory statements about her involvement in an extramarital affair by persons who were not known to her at the time. Indeed, after her first appeal, we had remanded to the trial court for further proceedings "limited to the allegation that unknown persons made false statements about Kelley's involvement in an extramarital affair." *Kelley* on reh'g (Oct. 17, 2001) at 2.

Kelley's proposed amended claim alleging that the School Officials talked with the local police about a missing school computer would not adduce evidence bearing on her original complaint's allegation of defamatory statements about an extramarital affair. Likewise, Kelley's proposed amended claim alleging that the School Officials had reported that she had falsified some grants would not result in evidence to support the original complaint. Evidence to support Kelley's proposed amended claim that she was falsely accused of bribing students with candy would not be evidence relating to or supporting her original claim about an alleged extramarital affair. Also, Kelley's proposed amended claim that information from her personnel file was improperly released does not appear to be evidence that would support her original claim regarding an alleged extramarital affair. Similarly, her proposed amended claim about encouraging the union to file an

unfair labor practice complaint would not seem likely to involve evidence supporting her original claim. As to her proposed amended claim about false statements by Tanoos "not limited to the falsehoods concerning an extra marital [sic] affair," (School's App. 49), evidence of those alleged false statements about other matters would not be evidence of false statements regarding the extramarital affair. Finally, it does not appear that evidence of false statements of an alleged extramarital affair "would naturally . . . be introduced" as evidence to support Kelley's proposed amended claim about damage to her professional reputation. 580 N.E.2d at 231. Therefore, under *McCarty's* reasoning, Kelley's proposed amended claims were not such that the claims would "relate back" under Trial Rule 15(C).

■ Further, it is not an abuse of discretion for the trial court to deny a motion to amend a pleading where such an amendment would be futile. *First of Am. Bank v. Norwest Bank,* 765 N.E.2d 149, 152 (Ind.Ct.App.2002), *trans. denied.* As the School correctly observes, the statute of limitations for a defamation claim in Indiana is two years. The proposed amended claims would not be found to "relate back" pursuant to the application of *McCarty;* thus, such an amendment would have been outside the statute of limitations and would have been futile. Therefore, the trial court's denial of her motion to amend would not be held to be an abuse of discretion on that basis. *See Id.*

Moreover, our original opinion held that claims in Kelley's original complaint involving statements by the School Officials "about Kelley's 'competence as a career educational administrator' or 'past behav-

---

**10.** Kelley failed to provide this complaint, the Second Amended Complaint, in her Appendix. How Kelley would have us make the analysis pursuant to *McCarty* without the benefit of this pleading is perplexing. However, the School did submit the Second Amended Complaint as part of its Appendix.

ior as a career educational administrator'" fell squarely within the scope of their employment with the School Corporation, and that various evaluation action "was clearly to 'further [their] employer's business.'" *Kelley* (July 30, 2001) at 9. We also found that such statements were within the scope of the School Officials' employment, rendering Kelley's failure to file a notice under the Indiana Tort Claims Act fatal. We further held that allegations of poor job performance by Kelley "plainly f[e]ll within the qualified privilege of common interest" of their employment. *Id.* at 10. It appears that each of the proposed new claims would suffer the same infirmities. Therefore, Kelley's proposed amendment of her complaint would have been futile. *See First of America Bank,* 765 N.E.2d at 152.

We do not find that the trial court's denial of Kelley's motion to file a third amended complaint was clearly against the logic and effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom. *Hendrickson,* 735 N.E.2d at 818. Accordingly, the trial court did not abuse its discretion when it denied Kelley's motion.

2. *Attorney Fees*

■ Whether to award attorney fees is a matter that lies within the "sound discretion" of the trial court. *Malachowski v. Bank One,* 682 N.E.2d 530, 533 (Ind.1997). "[I]n the absence of an affirmative showing of error or abuse of discretion," we must affirm the trial court. *Id.*

■ On cross-appeal, the School argues that the trial court incorrectly denied its motion for fees it incurred when Kelley "continued to litigate her defamation claim after the post-remand discovery established that her claim would fail for lack of evidentiary support." School's Br. at 13. Specifically, the School asserts that it was required to incur the expense of "an unnecessary, costly, and successful summary judgment proceeding" after Kelley "could not discover anyone able to testify with personal knowledge that Tanoos, Orr, or Lisby had published a statement about Kelley's involvement in an alleged marital infidelity." *Id.*

The School's motion for summary judgment argued that it had "negated the element of 'publication' which is essential to Plaintiff's defamation claim" and provided designated evidence from discovery in that regard. The School's brief in support of its petition for attorney's fees cited Kelley's answers to interrogatories and Kelley's own deposition to assert that during discovery "it became clear" that neither Kelley nor any of her potential witnesses "possessed any admissible first-hand knowledge linking the [School Officials] to the rumor about the affair." (Appellee's App. 203).

In Kelley's memorandum opposing summary judgment, she argued that the designated evidence left "no doubt that there is a genuine issue of material fact in this case concerning whether the defendants defamed the plaintiff." (Appellee's App. 185). Kelley cited designated evidence indicating three persons verified to her that they were aware of the rumor and that Lisby had acknowledged to her having heard the rumor. This, she argued, "demonstrates that, at the very least, there is a genuine issue of fact concerning whether plaintiff can prove that defendants published the defamatory statements." (Appellee's App. 187). In her memorandum opposing the School's petition for attorney's fees, she again argued that this evidence "arguably demonstrated that, at the very least, there was a genuine issue of fact concerning whether plaintiff could prove that defendants published the defamatory statements." (Appellee's App. 259).

Kelley's arguments to the trial court are weak, given that defeating a motion for summary judgment requires more from the nonmovant than the assertion that she may be able to prove the matter of law at issue. *See* T.R. 56(C). Nevertheless, the trial court had before it the submissions of both the School and Kelley. It apparently concluded that the evidence adduced during post-remand discovery did not clearly and equivocally signal to Kelley that she should cease pursuit of her defamation claim, and that the resulting School's motion for summary judgment did not impose such an unnecessary and costly burden as to warrant the award of attorney fees. The School cites *Garza v. Lorch,* 705 N.E.2d 468, 475 (Ind.Ct.App.1998), but *Garza* affirmed the trial court's award of attorney fees. Thus, we do not read *Garza* itself to constitute "an affirmative showing of error or abuse of discretion" on the part of the trial court in this case. *Malachowski,* 682 N.E.2d at 532. Therefore, we do not find the trial court's denial of the School's petition for an award of attorney fees to be error.

### 3. *Appellate Attorney Fees*

Indiana Appellate Rule 66(E) provides that we "may assess damages if an appeal ... is frivolous or in bad faith." It is within our discretion to award such damages, which "may include" attorney fees. *Id.* Despite this authority, we must bear in mind that the discretion to award appellate attorney fees under the Rule is limited to instances where the appeal "is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Orr v. Turco Mfg. Co.* 512 N.E.2d 151, 152 (Ind.1987).

We have categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. *Boczar v. Meridian St. Fdtn.,* 749 N.E.2d 87, 95

(Ind.Ct.App.2001). To prevail on a substantive bad faith claim, the party must "show that the 'appellant's contentions and argument are utterly devoid of all plausibility.'" *Id.* (quoting *Orr,* 512 N.E.2d at 153). Procedural bad faith occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and by the reviewing court. *Boczar,* 749 N.E.2d at 95–96.

We first note that at the outset, Kelley's appeal failed to provide the necessary statement of facts from which we could proceed to consider her claim. This omission required the expenditure of additional time by both the School, to provide missing information, and this court, upon which it was incumbent to verify certain matters.

Of greater import is another omission by Kelley. Kelley's appeal raised only one issue: whether the trial court erred in denying her motion to amend her complaint. The thrust of her argument was that the proposed amended claims were "similar in nature" to her pending complaint's defamation claim to be considered on remand. Kelley's Br. at 5. Yet Kelley's Appendix failed to include the complaint that she sought to amend. We find this omission on Kelley's part to entail both substantive and procedural bad faith. Without the complaint she proposed to amend, how could a reviewing court possibly analyze the purported similarity that she argued? And Appellate Rule 50(A) mandates that the Appendix "shall contain" pleadings "that are necessary for resolution of the issues raised on appeal." Inclusion of the complaint that she sought to amend was necessary to resolve the issue she raised.

Further, the complaint that she sought to amend—but which she did not include in her Appendix—contained several claims that had been initially framed as ones that were held to have been finally adjudicated in the trial court's order partially granting the School's motion for judgment on the pleadings. Her proposed amended complaint would have recast these claims as a form of defamation. For example, in the second amended complaint, Kelley had made allegations concerning (1) a possible unfair labor practices filing; (2) disclosure of false personnel file information; and (3) damage to her professional reputation. To ask us to find that the trial court had erred in its consideration of the pleadings before it when she did not give us the benefit of having those same pleadings seems, again, to be a blend of both substantive and procedural bad faith.

We acknowledge Kelley's contention that her arguments as to the application of *McCarty* were sincere, and we do not mean to suggest that an unsuccessful argument is necessarily one made in bad faith. However, we have already held that even if the trial court had granted Kelley's motion to amend her complaint, such amendment would have been futile and for naught. Therefore, we cannot accept Kelley's argument that her appeal cannot be found devoid of all plausibility. Accordingly, we remand this cause to the trial court with instructions to calculate the amount of appellate attorney fees that the School is entitled to recover. *See Thacker v. Wentzel,* 797 N.E.2d 342, 348 (Ind.Ct.App.2003).

Affirmed and remanded.

RILEY, J., and BAILEY, J., concur.